75 P.3d 497 (2003)
150 Wash.2d 102
Maria TEGMAN, Linda Leszynski and Diana Calixto, Respondents,
v.
ACCIDENT & MEDICAL INVESTIGATIONS, INC., a Washington corporation, Richard McClellan and Jane Doe McClellan, individually and as husband and wife, and the marital community composed thereof; Joy A. Brown and John Doe Brown, individually and as wife and husband, and the marital community composed thereof; Michael D. Hoyt and Jane Doe Hoyt, individually and as husband and wife, and the marital community composed thereof; James P. Bailey and Jane Doe Bailey, individually and as husband and wife, and the marital community composed thereof; Camille H. Jescavage and John Doe Jescavage, individually and as husband and wife, and the marital community composed thereof, Defendants,
Delores M. Mullen and John Doe Mullen, individually and as wife and husband, and the marital community composed thereof; Lorinda S. Noble and John Doe Noble, individually and as wife and husband, and the marital community thereof, Petitioners.
No. 71811-3.
Supreme Court of Washington, En Banc.
Argued May 29, 2002.
Decided August 28, 2003.
Lorinda Noble, Colville, Floyd Fulle, Clinton, for petitioners.
Gregory Lucas, Mona Smith, Bellevue, for respondents.
MADSEN, J.
The issue we decide is whether negligent defendants are jointly and severally liable for damages resulting from both negligent and intentional acts. We hold that under RCW 4.22.070 the damages resulting from negligence must be segregated from those resulting from intentional acts, and the negligent defendants are jointly and severally liable only for the damages resulting from their negligence. They are not jointly and severally liable for damages caused by intentional acts of others. We reverse the Court of Appeals and remand for segregation of damages and redetermination of petitioner Lorinda Noble's liability.

*498 FACTS
On April 26, 1989, plaintiff-respondent Maria Tegman sustained injuries in an automobile accident. She retained G. Richard McClellan and Accident and Medical Investigations, Inc. (AMI) for legal counsel and assistance in handling her personal injury claims. She signed a contingency fee agreement with AMI, believing that McClellan was a licensed attorney. McClellan has never been an attorney in any jurisdiction.
During their representation of Tegman, McClellan and AMI advanced funds for her therapy. Settlement offers were submitted on her behalf, although she only learned of these after the fact.
McClellan and AMI employed Camille Jescavage and Lorinda Noble, both licensed attorneys. McClellan entered into contingency fee agreements with AMI's clients and processed settlements of AMI cases through his own bank account rather than a legal trust account. Jescavage and Noble knew this, and knew that when they settled cases for AMI, the proceeds were placed into McClellan's account. Both attorneys also knew that McClellan was not a licensed attorney.
Noble resigned her position in May 1991, after being employed approximately six months. During her employment, she also represented Ms. Tegman in connection with her personal injury claim. She never advised Tegman that McClellan engaged in the unauthorized practice of law, that McClellan had taken her files, that settlements were processed through his personal account and not an attorney's trust account, that clients were not being properly advised of the status of their cases, and that fees were being shared with nonlawyers.
In July 1991, McClellan hired Delores Mullen as a paralegal. She quit working for McClellan and AMI in December 1991. During her period of employment, Mullen considered Jescavage to be her supervising attorney, while Jescavage worked for AMI, although Jescavage did little supervision. After Jescavage left in September 1991, McClellan advised Mullen to consider James Bailey, another attorney, as her supervising attorney. She did not confirm that Bailey was her supervising attorney, but continued to perform legal services for AMI clients while aware of some of McClellan's questionable practices and knowing of substantial improprieties. Bailey later advised her that he was not her supervising attorney. Mullen worked on 50 to 60 cases, including Tegman's. When she left, she did not advise Tegman of McClellan's and AMI's improper practices.
In December 1991, McClellan settled Tegman's case without her knowledge or consent, forged her signature, and placed the $35,000 settlement funds into his general bank account. Later he obtained a "release" from her, and sent her a check for what he determined was the balance of her share of the settlement proceeds.
In 1993, Tegman and two other individuals who had retained McClellan and AMI to represent them in pursuing personal injury claims sued McClellan, AMI, Mullen, and Jescavage. Tegman also sued Noble. The plaintiffs sought damages on numerous grounds. Their cases were consolidated, and discovery occurred from 1993 to 1998.[1] The trial court entered summary judgment against McClellan and AMI on the issue of liability for "negligence, the unauthorized practice of law, legal malpractice, breach of fiduciary relationship, fraud, misrepresentation, conversion, breach of contract, violation of the Consumer Protection Act [chapter 19.86 RCW], and criminal profiteering." Clerk's Papers (CP) (conclusion of law 179) at 776. Following a six-day bench trial, the court held Mullen, Noble, and Jescavage liable for negligence and legal malpractice in Tegman's case, held that Tegman herself was not at fault, and awarded damages.
Noble appealed.[2] She argued, among other things, that the trial court erred in holding her jointly and severally liable to Tegman for compensatory damages in the amount of *499 $15,067.25 (the amount representing compensatory damages after deducting amounts Tegman had already received). She maintained the trial court erroneously imposed joint and several liability for both negligent and intentional torts, rather than imposing joint and several liability only as to the negligent torts. The Court of Appeals affirmed, reasoning that the trial court had in fact held Noble, Jescavage, and Mullen jointly and severally liable only for the actual damages caused by their negligence. Tegman v. Accident & Med. Investigations, Inc., 107 Wash. App. 868, 883, 30 P.3d 8 (2001), review granted, 145 Wash.2d 1034, 43 P.3d 21 (2002). The Court of Appeals said the trial court treated the action against McClellan and AMI as functionally separate from the action against Noble, Jescavage and Mullen. Id.
This court granted Noble's petition for review on the issue of joint and several liability. She maintains that the actual compensatory damages due to intentional torts must be segregated, and that under RCW 4.22.070(1)(b) she is jointly and severally liable only for the remainder, i.e., that portion of the damages resulting from negligent acts.

ANALYSIS
In 1986, the legislature enacted the tort reform act of 1986, declaring its purpose to "enact further reforms in order to create a more equitable distribution of the cost and risk of injury and increase the availability and affordability of insurance." Laws of 1986, ch. 305, § 100. The legislature specifically noted the escalating costs to governmental entities through increased exposure to lawsuits, awards, and increased costs of insurance coverage, as well as increases in costs in professional liability insurance for physicians and other health care providers, and other professionals. The legislature stated its intent "to reduce costs associated with the tort system, while assuring that adequate and appropriate compensation for persons injured through the fault of others is available." Id.[3] The act furthered reforms, which began with adoption of comparative negligence in 1973, by abolishing joint and several liability in most situations. Kottler v. State, 136 Wash.2d 437, 443, 963 P.2d 834 (1998).
RCW 4.22.070, enacted as part of the tort reform act of 1986, is "the centerpiece of the 1986 amendatory package." Kottler, 136 Wash.2d at 443, 963 P.2d 834; accord Morgan v. Johnson, 137 Wash.2d 887, 895, 976 P.2d 619 (1999). As we have consistently recognized, RCW 4.22.070 provides that several, or proportionate, liability is now intended to be the general rule.[4]Kottler, 136 *500 Wash.2d at 444-45, 963 P.2d 834; Welch v. Southland Corp., 134 Wash.2d 629, 633, 952 P.2d 162 (1998); Anderson v. City of Seattle, 123 Wash.2d 847, 850, 873 P.2d 489 (1994); Gerrard v. Craig, 122 Wash.2d 288, 292, 857 P.2d 1033 (1993); Washburn v. Beatt Equip. Co., 120 Wash.2d 246, 294 n. 7, 840 P.2d 860 (1992) ("[w]hile RCW 4.22.030 suggests that RCW 4.22.070 is an exception to a general rule, RCW 4.22.070 is in fact an exception that has all but swallowed the general rule"); id. at n. 7.
RCW 4.22.070(1) states that "[i]n all actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages...." (Emphasis added.) "Fault," under chapter 4.22 RCW, does not include intentional acts or omissions. RCW 4.22.015 defines "fault" to include "acts or omissions, including misuse of a product, that are in any measure negligent or reckless ... or that subject a person to strict tort liability or liability on a product liability claim."
This court has concluded that "intentional torts are part of a wholly different legal realm and are inapposite to the determination of fault pursuant to RCW 4.22.070(1)." Price v. Kitsap Transit, 125 Wash.2d 456, 464, 886 P.2d 556 (1994); see Morgan, 137 Wash.2d at 894-96, 976 P.2d 619; Schmidt v. Cornerstone Invs., Inc., 115 Wash.2d 148, 162, 795 P.2d 1143 (1990) ("the Legislature's intent to exclude intentional conduct from the definition of fault is clear"). In Welch, this court held that in light of the statutory definition of "fault," a defendant who was not an intentional actor could not apportion liability to a third party intentional tortfeasor under RCW 4.22.070. Welch, 134 Wash.2d 629, 952 P.2d 162. In short, this court has consistently recognized that liability for intentional acts or omissions does not fall within RCW 4.22.070(1), because no "fault," as defined under RCW 4.22.015, is involved. See also Standing Rock Homeowners Ass'n v. Misich, 106 Wash.App. 231, 246, 23 P.3d 520 ("[b]ecause the statutory definition of `fault' does not include `intentional acts or omissions[,]' RCW 4.22.070 does not apply to intentional torts" (quoting Welch, 134 Wash.2d at 634, 952 P.2d 162)), review denied, 145 Wash.2d 1008, 37 P.3d 290 (2001).[5]
This case presents the situation where both negligent and intentional acts caused the plaintiff's harm, and requires us to determine the nature of a negligent defendant's liability in these circumstances, and specifically, whether that defendant is jointly and severally liable for damages caused both by that negligence and the intentional acts of other defendants. The answer is found in RCW 4.22.070(1), which addresses liability of at-fault entities and which, as explained, does not encompass intentional acts or omissions.
Unfortunately, the dissent largely focuses on a different issue, i.e., the liability of the intentional tortfeasor. The dissent's focus draws attention from the legislature's plain intent that liability for negligence is determined under new principles set out in RCW 4.22.070. The legislature effected sweeping changes in the law respecting negligent defendants' liability, despite the dissent's claim to the contrary. See dissent at 505-506.
The first sentence of RCW 4.22.070 restricts application of the statute to questions of liability where at-fault entities are involved, and provides that "the trier of fact *501 shall determine the percentage of the total fault which is attributable to every entity" causing plaintiff's damages. RCW 4.22.070(1) (emphasis added). Intentional acts are not considered and this determination of "fault" percentages is thus limited to acts that are negligent, reckless, or that subject the actor to strict liability. The next sentence of RCW 4.22.070(1) states that "[t]he sum of the percentages of the total fault attributed to at-fault entities shall equal one hundred percent." (Emphasis added.) Only at-fault entities' percentages of fault are determined, and the total of at-fault entities' percentages of fault must equal 100 percent. Importantly, the statute does not speak of a total representing 100 percent of liability, but, rather, a total representing 100 percent of fault. This only makes sense in that the statute is concerned with fault-based conduct and excludes intentional acts or omissions.
The third sentence states which entities' fault shall be determined, and includes the claimant, defendants, third party defendants, and entities who have been released, those who have individual defenses against the claimant, and those who are immune (other than under Title 51 RCW). The fourth sentence states that judgment shall be entered against each defendant in an amount representing that entity's proportionate share except for those who have been released or who are immune, and those who prevailed on any other individual defense.
RCW 4.22.070(1) then states that "[t]he liability of each defendant shall be several only and shall not be joint...." This part of the statute is the crux of the reform that RCW 4.22.070 carries out, dictating the rule of several or proportionate liability. There are exceptions to this general rule. The one relevant here is RCW 4.22.070(1)(b), which provides that "[i]f the trier of fact determines that the claimant or party suffering bodily injury or incurring property damages was not at fault, the defendants against whom judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the claimant's total damages." (Emphasis added.)
This exception plainly concerns how to apportion liability among at-fault defendants where the plaintiff is fault-free. That is, the only joint and several liability contemplated by this exception is that shared by the at-fault defendants. This is clear because the exception mandates joint liability for the "sum" of the defendants' "proportionate shares" of the total damages. This language reflects the earlier language in RCW 4.22.070(1). As noted, the first sentence of RCW 4.22.070(1) requires a determination of the "percentage[s] of the total fault which is attributable to every entity" responsible for plaintiff's damages, i.e., a determination of proportionate liability of each at-fault entity. The second sentence provides that "[t]he sum of the percentages of the total fault" must be 100 percent. Id. (emphasis added). The fourth sentence mandates entry of judgment against each defendant in "an amount which represents that party's proportionate share of the claimant's total damages." Id. (emphasis added). However, percentages of total fault determined under subsection (1) are determined without regard to intentional acts or omissions, as explained, and as held in Welch and dictated by the statutory definition of "fault" in RCW 4.22.015. See also Price, 125 Wash.2d at 464, 886 P.2d 556.
It is apparent that by using the same terms in RCW 4.22.070(1)(b) as used earlier in subsection (1), the legislature intended that the joint and several liability provided for in RCW 4.22.070(1)(b) is limited to the at-fault defendants whose proportionate fault has been determined under subsection (1). See Welch, 134 Wash.2d at 636, 952 P.2d 162 (when similar words are used in different parts of a statute, it is presumed the same meaning is intended throughout the statute); Medcalf v. Dep't of Licensing, 133 Wash.2d 290, 300-01, 944 P.2d 1014 (1997) (the legislature's use of the same word or words in different parts of the same statute gives rise to a presumption they are intended to have the same meaning). Therefore, RCW 4.22.070(1)(b) does not concern any liability for damages caused by intentional acts or omissions and, therefore, does not address joint and several liability for intentional acts or omissions.
Even as to fault-based damages where there is a fault-free plaintiff, RCW *502 4.22.070(1)(b) does not set forth a rule of full joint and several liability as known at common law. As this court has on several occasions noted, full joint and several liability does not exist where there is an "innocent" or fault-free plaintiff. Instead, the statute states a modified form of joint and several liability. Kottler, 136 Wash.2d at 446-47, 963 P.2d 834; Washburn, 120 Wash.2d at 294, 840 P.2d 860 ("the form of joint and several liability which exists where there is a fault-free plaintiff is not, under RCW 4.22.070, the same as the joint and several liability which existed prior to the tort reform act of 1986"). Joint and several liability under RCW 4.22.070(1)(b) is limited to the sum of the proportionate shares of the at-fault defendants, a distinction also noted in Washburn, 120 Wash.2d at 294, 840 P.2d 860, and Kottler, 136 Wash.2d at 446, 963 P.2d 834. Another difference from the common law principle is that joint and several liability under 4.22.070(1)(b) only applies as to defendants against whom judgment is entered. Allstate Ins. Co. v. Batacan, 139 Wash.2d 443, 449, 986 P.2d 823 (1999); Anderson, 123 Wash.2d at 851, 873 P.2d 489; Washburn, 120 Wash.2d at 294, 840 P.2d 860. As RCW 4.22.070 expressly provides, the proportionate shares of released parties, those with individual defenses, and immune parties[6] are not included and will not be part of the joint and several liability calculation. By excluding these shares from the joint and several liability calculation, and omitting any consideration of intentional acts or omissions, the legislature has plainly shown that RCW 4.22.070(1)(b) does not mandate full joint and several liability, as at common law, even in the case of a fault-free plaintiff.[7] The dissent is accordingly mistaken when it claims that the Legislature "preserved joint and several liability" for fault-free plaintiffs in "accord with the status quo." Dissent at 510.
Thus, RCW 4.22.070 provides that in actions involving a fault-free plaintiff and damages caused by both at-fault entities and intentional tortfeasors, the at-fault defendants are jointly and severally liable for the sum of their proportionate shares of the claimant's total damages. That is, negligent defendants are jointly and severally liable only for that part of the total damages that they negligently caused. The at-fault defendants are not jointly and severally liable under RCW 4.22.070(1)(b) for any damages resulting from intentional acts or omissions.
Nor are the negligent defendants jointly and severally liable under RCW 4.22.030 for any such damages because their liability clearly is determined under RCW 4.22.070. See RCW 4.22.030 "([e]xcept as otherwise provided in RCW 4.22.070, if more than one person is liable to a claimant on an indivisible claim for the same injury, death or harm, the liability of such persons shall be joint and several" (emphasis added)).[8]
The dissent also mistakenly includes intentional tortfeasors within those whose liability is determined under RCW 4.22.070(1)(b), and claims that we have inserted the words "fault-based" into this provision in order to preclude joint and several liability of negligent defendants for intentionally caused damages. Dissent at 510-511. There is no need to add any language to reach the result we reach. The language the legislature itself has used makes it clear that RCW 4.22.070(1)(b) pertains to fault-based damages and at-fault defendants. By attempting *503 to deflect attention from the actual language used, the dissent avoids the critical language of RCW 4.22.070, which lies at the very heart of this case. No matter what policies the dissent wishes the legislature had codified or continued, the central question in this case is answered by RCW 4.22.070(1) and (1)(b). While the dissent obviously does not like the answer, it is not up to this court to rewrite the statute nor to construe it free of the legislature's plainly expressed meaning. Contrary to the dissent's theme, the statute effects a number of changes; joint and several liability is not what it used to be.
All of the defendants in this case are jointly and severally liable, but not for the same damages. The damages due to intentional acts must be segregated from damages caused by fault-based acts or omissions because RCW 4.22.070(1)(b) only addresses liability for at-fault entities. The liability of intentional tortfeasors for damages caused by their intentional acts or omissions is not determined under RCW 4.22.070(1). Once the damages due to intentional acts or omissions are segregated, then, as to all remaining damages, i.e., those damages resulting from fault-based acts or omissions, all the negligent defendants causing those damages are jointly and severally liable.
The dissent believes, however, that under our decision negligent defendants are improperly allowed to apportion liability to the intentional tortfeasor, contrary to this court's decision in Welch. Under RCW 4.22.070, and our decision here, intentional tortfeasors are not entitled to the benefit of proportionate liability; the negligent defendant is not permitted to apportion fault to an intentional tortfeasor. This is in accord with Welch. There, the trial court had reasoned that "`where the plaintiff, a negligent tortfeasor defendant, and an intentional tortfeasor are all liable, the negligent defendant is entitled to the benefit of the comparative fault statute,'" and that "`unidentified tortfeasors are entities that a jury may attribute fault to under RCW 4.22.070.'" Welch, 134 Wash.2d at 631, 952 P.2d 162 (quoting clerk's papers). This court determined that under RCW 4.22.070(1) fault cannot be apportioned to intentional tortfeasors, stating that if "fault is to be apportioned to intentional tortfeasors, it is for the Legislature to make such a determination." Welch, 134 Wash.2d at 637, 952 P.2d 162. Here, it is clear that no fault is apportioned to the intentional tortfeasor, exactly as RCW 4.22.070 requires and Welch holds.
Segregating fault-based damages from those caused by intentional acts or omissions should pose no great difficulty because similar allocations are already part of the statutory scheme. When this State's legislature rejected the absolute bar of contributory negligence to recovery by negligent plaintiffs and adopted comparative negligence principles, Laws of 1973, 1st Ex.Sess., ch. 138, § 1, the "premise that wrongs were inherently indivisible or that responsibility could not rationally be apportioned among multiple parties fell into disfavor." Gregory C. Sisk, The Constitutional Validity of the Modification of Joint and Several Liability in the Washington Tort Reform Act of 1986, 13 U. Puget Sound L.REV. 433, 437 (1990).
Through the adoption of comparative fault, the Washington State Legislature rejected the "tortured analysis" that "harm which is indivisible leaves no logical basis for apportionment." The unitary nature of the harm and the assignment of responsibility are two separate matters. When multiple proximate causes have been determined for a single injury, the trier of fact still must determine and apportion the responsibility based upon the varying degrees of culpability and causation among the actors. As commentators have explained: "It does not follow that simply because the harm is indivisible that there is no basis for apportionment. It is the responsibility for causing the harm which should be the focus of the inquiry." Initially through the adoption of comparative negligence between plaintiffs and defendants that have concurrently caused the harm, and subsequently through the enactment of RCW 4.22.070 to govern the accountability among multiple tortfeasors contributing to a single injury, Washington has adopted comparative fault as the touchstone for *504 apportionment of responsibility in damages.
Gregory C. Sisk, Interpretation of the Statutory Modification of Joint and Several Liability: Resisting the Deconstruction of Tort Reform, 16 U. PUGET SOUND L.REV. 1, 41 (1992) (footnotes and emphasis omitted). Under comparative fault principles, the trier of fact must allocate fault between a negligent plaintiff and a negligent defendant. RCW 4.22.005. Similarly, under RCW 4.22.070(1), where the damages result from both intentional acts and omissions and "fault," i.e., negligence, recklessness, and conduct subjecting the actor to strict liability, the damages resulting from the intentional acts and omissions must be segregated from damages that are fault-based.
The dissent protests that the required segregation will be baffling. Dissent at 505. Segregating damages in cases of "indivisible" harm has been a part of this State's law since adoption of comparative negligence. The dissent also complains that it is unprecedented for a trier of fact to both segregate intentionally caused damages and apportion fault among negligent defendants for the remaining damages. Both of these actions are appropriate in a case like this one where there are multiple defendants and both intentional and negligent acts have caused harm. There is no particular mystery involved, nor any duplicative calculations. Whether segregation is required in other states is irrelevant unless they have statutes like ours. Neither the parties nor the dissent has identified any such statutes (state statutes vary considerably in this area), and research has failed to disclose any. Lack of precedent is hardly a bar to carrying out the legislature's statutory directives.
Among the multiple defendants in this case, McClellan and AMI are the two defendants whose intentional acts caused harm to plaintiff Tegman. The trial court's conclusion of law 179 states, however, that McClellan and AMI are liable to Tegman in the amount of $15,067.25 for engaging in negligence, the unauthorized practice of law, and legal malpractice, among other things. The court explained in its memorandum decision that "McClellan and AMI are liable to [Tegman in the amount of $15,067.25] for engaging in negligence, legal malpractice ... breach of contract, violation of the Consumer Protection Act, criminal profiteering and leading organized crime." CP at 805. The judgment in the amount of $15,067.25 thus includes compensatory damages for harm caused by McClellan's and AMI's negligence and by their intentional acts or omissions. The trial court said that Noble, Jescavage, and Mullen were liable to Tegman for negligence and legal malpractice.
McClellan and AMI each "wear two hats" as both intentional and negligent actors and the total compensatory damages caused by them and the other defendants, $15,067.25, includes both intentional and fault-based damages. The trial court concluded that McClellan and AMI were 75 percent responsible for the compensatory damages in Tegman's case. However, this percentage cannot be used to establish these entities' share of proportionate fault for nonintentional acts or omissions under RCW 4.22.070. This is because the 75 percent represents both intentionally caused and negligently caused harm, as explained. Accordingly, some of the $15,067.25 is attributable to intentional acts or omissions and must be segregated. Liability for the balance, after separating out that part due to McClellan's and AMI's intentional acts or omissions, is determined under RCW 4.22.070 because the balance is attributable to fault-based conduct, and, as to that amount, all of the defendants are jointly and severally liable for the sum of their proportionate shares. Stated another way, all of the defendants whose fault contributed to Tegman's damages, including McClellan and AMI to the extent of their fault (nonintentional acts or omissions), are jointly and severally liable for those fault-based damages. McClellan and AMI are also liable for the intentionally caused damages, but the other defendants are not jointly and severally liable for the intentionally caused damages.
The plaintiff may obtain recovery from the liable defendants, both intentional and negligent tortfeasors. That the full recovery for all damages may not be claimed against a negligent defendant for all negligent and intentional acts reflects the legislative intent set out in RCW 4.22.070. The legislative scheme also serves to provide some relief to *505 negligent defendants whose conduct is not as egregious as the intentional tortfeasor, nor the cause of the intentionally based damages. This serves purposes of the tort reform act to achieve "a more equitable distribution of the cost and risk of injury and increase the availability and affordability of insurance." Laws of 1986, ch. 305, § 100. Specifically, where negligent defendants' liability is for their negligent acts, but not intentional acts, this will tend to reduce costs due to increased exposure to awards, increased costs of insurance coverage and increased costs of professional liability insurance, as designed by the legislature. See id.
The risks that any one or more of the defendants may be insolvent, and the possibility of less than a complete recovery, is no different from the risk that the plaintiff bears when only one defendant caused the plaintiff's harm.

CONCLUSION
Noble is jointly and severally liable only for those damages caused by "fault" of the defendants, and to this extent she is jointly and severally liable with all the defendants. She is not, however, liable for damages that result from intentional acts or omissions. We remand for segregation of that part of the damages due to intentional conduct from those damages due to negligence.
ALEXANDER, C.J., and BRIDGE, OWENS, JJ., and SMITH, J.P.T., concur.
CHAMBERS, J. (dissenting).
The majority's statutory construction will be torturous if not unworkable in trials across the state and will cause absurd results for parties. If claimants mix negligent and intentional claims, diligent judges and counsel will be required to ask juries to segregate tortfeasor liability for indivisible damages twice under inconsistent standards. First, the jury must now segregate liability based on conduct, and secondly, based on whether the indivisible damages were caused by intentional or negligent acts. As these inquiries require resolution of sharply different questions, the calculations will baffle even the most conscientious triers of fact. I respectfully dissent.
Consider the innocent plaintiff who suffered significant investment losses caused by the wrongful acts of corporate insiders who first committed misfeasance followed by fraud to cover up the misfeasance. The jury will first be asked, properly, to apportion fault among the defendants, and then will be asked to segregate the diminished value of the stock between negligent and intentional acts. This pattern will repeat when a child is abused by a person vested with authority by a trusted institution. The legislature did not intend, nor does the statute require, such a strange deliberative process.
Under modern Washington State tort law, "[i]f the trier of fact determines that the claimant or party suffering bodily injury or incurring property damages was not at fault, the defendants against whom judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the claimant's total damages." RCW 4.22.070(1)(b). Thus, the legislature expressed its intent that the fault free plaintiff is entitled, as a matter of law, to joint and several liability from all defendants against whom judgment is entered. The statute does not require the trier of fact to somehow separate indivisible damages between those caused by negligence and those caused by intentional conduct; a calculation different in nature from the segregation of fault between various negligent actors; a calculation juries have long been making.[1]
*506 The legislature did not have such a radical change in mind. The 1986 statute modified our tort law; to understand the tort reform of 1986, we need to understand what was being reformed. First, I will examine our tort law as the legislature would have understood it in 1986 when RCW 4.22.070 was adopted. Next, I will examine the language adopted by the legislature. Finally, I will examine the facts of this case.

I.

INTENTIONAL ACTORS HAVE ALWAYS BEEN (A) EACH 100 PERCENT ACCOUNTABLE AND (B) JOINTLY AND SEVERALLY LIABLE
A. INTENTIONAL ACTORS HAVE ALWAYS BEEN EACH 100 PERCENT ACCOUNTABLE FOR THEIR CONDUCT
1. Common Law
Intentional tortfeasors have never been permitted to reduce their liability by comparing their intentional fault with other intentional actors, other negligent actors, or the conduct of the claimant. At common law, there was no contribution among tortfeasors whether or not they had acted in concert or with the intention of injuring the plaintiff. See Cornelius J. Peck, Washington's Partial Rejection and Modification of the Common Law Rule of Joint and Several Liability, 62 WASH. L.REV. 233, 236 (1987); Christopher M. Brown & Kirk A. Morgan, Comment, Consideration of Intentional Torts in Fault Allocation: Disarming the Duty to Protect Against Intentional Conduct, 2 WYO.L.REV. 483, 488 (2002). Our common case law and statutory law confirm these principles.
Before comparative negligence was widely adopted, it was black-letter law that contributory negligence principles were not a defense to an intentional tort action. And under comparative negligence, this same defense of nonapplicability to intentional torts carried over and became the general rule, so that there would be no apportionment of damages where an intentional tort was involved.
Allan L. Schwartz, Annotation, Applicability of Comparative Negligence Principles to Intentional Torts, 18 A.L.R. 5th 525, 525 (1994).
Accordingly, a defendant who had paid the entire damages could not bring an action to force contribution from other tortfeasors. Underlying this rule were the twin principles that an indivisible harm cannot reasonably be apportioned, and that the court should not assist a wrongdoer in spreading the consequences of wrongful acts among other, even culpable, parties. WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS 307 (4th ed.1971).
2. Under Modern Statutory Comparative Fault
These rules began to change with the adoption of comparative liability. The Washington legislature first enacted a comparative liability statute in 1973.[2]See LAWS OF 1973, 1st Ex. Sess., ch. 138, § 1, codified as former RCW 4.22.010 (repealed by Laws of 1981, ch. 27, § 17). "Comparative negligence means comparison. The trier of fact compares the negligence of plaintiff and defendant," and allows a negligent defendant to reduce liability by the percentage of fault attributable to the plaintiff. Amend v. Bell, 89 Wash.2d 124, 130-31, 570 P.2d 138 (1977) (quoting William L. Prosser, Comparative Negligence, 51 MICH. L.REV. 465, 465 n. 2 (1953)); Bradley v. Maurer, 17 Wash.App. 24, 29, 560 P.2d 719 (1977). The comparative negligence system provides greater fairness to defendants and provides a "more complete, workable and effective remedy" for the injured plaintiff. Godfrey v. State, 84 Wash.2d 959, 965, 530 P.2d 630 (1975).
Our legislature clearly distinguished between negligent and intentional actors when it adopted comparative liability, and left intact the rules of liability and recovery in intentional torts.[3] The "legislative history *507 accompanying the adoption of comparative fault reflects a conscious decision to exclude intentional torts from the comparative fault system." 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 13.49, at 316 (2000); see also Schwartz, supra, 18 A.L.R.5th at 525.
Under Washington's comparative negligence scheme as of 1986, the intentional and the negligent tortfeasor were not allowed to compare fault for the purpose of allocation of liability. Across the nation, intentional tortfeasors are still usually not permitted to reduce their liability by comparing their intentional fault with other intentional actors, other negligent actors, or the conduct of the plaintiff. DEWOLF & KELLER, supra, § 13.49, at 316; Honegger v. Yoke's Wash. Foods, Inc., 83 Wash.App. 293, 297, 921 P.2d 1080 (1996); RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 14 (2000). Similarly, negligent actors could not reduce their liability by comparing fault to intentional actors, though they could now reduce their liability by the fault of negligent parties. Welch v. Southland, 134 Wash.2d 629, 637, 952 P.2d 162 (1998); cf. RESTATEMENT, supra.
B. INTENTIONAL ACTORS HAVE ALWAYS BEEN EACH JOINTLY AND SEVERALLY LIABLE FOR THEIR CONDUCT
At common law, intentional tortfeasors have been jointly and severally liable since at least the decision in Merryweather v. Nixon, 101 Eng. Rep. 1337 (K.B.1799), cited in Michael L. Rustad & Thomas H. Koenig, Taming The Tort Monster: The American Civil Justice System as a Battleground of Social Theory, 68 BROOK. L.REV. 1, 105 (2002); cf. Doremus v. Root, 23 Wash. 710, 713, 63 P. 572 (1901); J.E. Pinkham Lumber Co. v. Woodland State Bank, 156 Wash. 117, 124, 286 P. 95 (1930), superseded by statute as stated in Seafirst Ctr. Ltd. P'ship v. Erickson, 127 Wash.2d 355, 898 P.2d 299 (1995).[4]
In the 1980s many states adopted statutes which modified joint and several liability, comparative fault, and contribution. See generally RESTATEMENT, supra, § 12 cmt. b. Rarely, if at all, did states change the principle that intentional actors were 100 percent jointly and severally liable to their victims. While not all statutory modifications have been conclusively analyzed by the courts of the relevant jurisdictions, commentators have concluded that most of the states which modified joint and several liability preserved joint and several for intentional tortfeasors. Id.[5]
Critically, not a single appellate decision has been found that stands for the proposition that joint and several liability of intentional tortfeasors has been abrogated or modified. Commentators generally support the retention of joint and several liability for intentional tortfeasors. See William Edward Westerbeke, Survey of Kansas Law: Torts, 33 U. KAN. L.REV. 1, 33 (1984); Richard W. Wright, The Logic and Fairness of Joint and Several Liability, 23 MEM. ST. U.L.REV. 45, 60 (1992); James J. Scheske, The Reform of Joint and Several Liability Theory: A Survey of State Approaches, 54 J. AIR L. & COM. 627, 652-53 (1988).
*508 Under common law, Washington case law, and statutory law as of 1986, intentional actors were jointly and severally liable for their conduct and could not reduce their liability by comparing their intentional conduct to the conduct of the plaintiff. Nor did our legislature permit intentional actors the benefit of contribution. Each intentional tortfeasor was 100 percent jointly and severally liable to those harmed. Accordingly, Accident & Medical Investigations, Inc. (AIM) and Richard McClellan are each 100 percent jointly and severally liable to Maria Tegman.

II.
BOTH BEFORE AND AFTER 1986, NEGLIGENT ACTORS HAVE NOT BEEN PERMITTED TO REDUCE THEIR LIABILITY TO AN INNOCENT PLAINTIFF BY THE HARM CAUSED BY AN INTENTIONAL ACTOR
A. COMMON LAW
Again, at common law, defendants were not allowed to compare conduct, whether the conduct was negligent or intentional. Even negligent actors were not allowed to reduce their liability by comparing their conduct with intentional actors. Particularly, when a tortfeasor negligently failed to exercise a duty of care that enabled another tortfeasor to commit an intentional harm to a plaintiff, the negligent tortfeasor could not expect any reduction of liability. RESTATEMENT (SECOND) OF TORTS § 449 cmt. b. (1965).
B. AFTER 1986
After American states began adopting comparative responsibility schemes, the majority of states concluded that negligent actors could not reduce their liability by comparing fault to intentional actors. RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY §§ 14, 26 (2000). Washington is among the majority. Id.; Welch, 134 Wash.2d at 637, 952 P.2d 162.
In the modern era, we first confronted whether negligent and intentional tortfeasors were comparable in the context of a real estate transaction gone bad. Schmidt v. Cornerstone Invs., Inc., 115 Wash.2d 148, 795 P.2d 1143 (1990). In Schmidt, plaintiffs alleged conspiracy, fraud, and negligent misrepresentation. Parties argued on appeal that a $150,000 setoff for a settlement should be applied only against the negligent claims and not the intentional claims. We declined to remand for apportionment between intentional and negligent claims, in part, because "plaintiffs' argument does not account for the fact defendants in this case were jointly and severally liable for damages caused by their conduct." Schmidt, 115 Wash.2d at 162, 795 P.2d 1143.
There, we observed that the final report of the Senate Select Committee on Tort and Product Liability Reform plainly revealed that the legislature's exclusion of intentional conduct from the definition of "fault" was a conscious decision to not allow such comparisons. The committee's final report stated:
"The definition is intended to encompass all degrees of fault in tort actions short of intentionally caused harm. This would include negligence, gross negligence, recklessness, willful and wanton misconduct and strict liability.... The idea is to permit the trier of fact to consider all the conduct short of what would be considered an intentional tort and make a reduction of the plaintiff's recovery for his or her share."
Schmidt, 115 Wash.2d at 161-62, 795 P.2d 1143 (emphasis added) (quoting 1 SENATE JOURNAL, 47th Leg., Reg. Sess., at 635 (Wash.1981)).
Then, in Welch, we confronted the issue squarely. Welch was shot while shopping at a 7-11 convenience store. Southland, the owner of the 7-11, was alleged to have failed to maintain a safe premises for its business invitees. Southland argued it should be permitted to compare the intentional conduct of the assailant to reduce its fault. This court took a hard look at the statute and rejected Southland's attempt to compare negligent and intentional conduct. "If the Legislature had intended liability to be apportioned to intentional tortfeasors, it could have included intentional acts and omissions within the statutory definition of fault when it enacted RCW 4.22.070." Welch, 134 Wash.2d at 636, *509 952 P.2d 162; see also Price v. Kitsap Transit, 125 Wash.2d 456, 886 P.2d 556 (1994); Schmidt, 115 Wash.2d 148, 795 P.2d 1143. We found that the statute did not authorize apportionment of damages between intentional and negligent causes. "[A] negligent tortfeasor is not entitled to apportion liability to an intentional tortfeasor." Morgan v. Johnson, 137 Wash.2d 887, 895-96, 976 P.2d 619 (1999).
C. THE MAJORITY FAILS TO ADDRESS WELL ESTABLISHED POLICY REASONS FOR NOT PERMITTING NEGLIGENT ACTORS TO REDUCE THEIR LIABILITY BY THE PERCENTAGE OF HARM CAUSED BY INTENTIONAL ACTORS
The majority's conclusion contradicts the common law principles underlying the legislature's preservation of the principle that intentional and negligent torts cannot be compared to reduce the liability of a negligent tortfeasor.
There are good reasons not to compare negligent and intentional conduct. First, this matter commonly arises when one tortfeasor with a special relationship to another negligently fails to foresee and prevent the intentional tort of another. At common law, the negligent tortfeasor could not expect any reduction of liability. RESTATEMENT (SECOND) OF TORTS § 449 cmt. b (1965).
Like Washington did in Welch, other jurisdictions with similar statutory tort law have also refused to permit negligent actors to apportion liability to intentional actors. Compare, e.g., Welch, 134 Wash.2d 629, 952 P.2d 162 with Veazey v. Elmwood Plantation Assocs. Ltd., 93-C-2818 (La.11/30/94), 650 So.2d 712. In Veazey, an intruder entered plaintiff's second-story apartment through her bedroom window and raped her. The plaintiff sued the apartment owner, alleging misrepresentation of the apartment complex's security and the complex's history as the site of crime. The apartment owner sought to compare and apportion fault with the rapist. The Louisiana Supreme Court refused, noting, "[a]s a general rule, we find that negligent tortfeasors should not be allowed to reduce their fault by the intentional fault of another that they had a duty to prevent." Veazey, 650 So.2d at 719. Accord Cortez v. Univ. Mall Shopping Ctr., 941 F.Supp. 1096 (D.Utah 1996); Welch, 134 Wash.2d 629, 952 P.2d 162; Hills v. Bridgeview Little League Assoc., 306 Ill.App.3d 13, 713 N.E.2d 616, 239 Ill.Dec. 85 (1999); Kan. State Bank & Trust Co. v. Specialized Transp. Servs. Inc., 249 Kan. 348, 819 P.2d 587 (1991); Gould v. Toco Bell, 239 Kan. 564, 722 P.2d 511, 516 (1986); Blazovic v. Andrich, 124 N.J. 90, 590 A.2d 222 (1991); Turner v. Jordan, 957 S.W.2d 815 (Tenn.1997). Sound policy reasons support this rule. It encourages institutional players to guard against known risk to their invitees, even if that risk is caused by the intentional conduct of others. B. Scott Andrews, Comment, Premises LiabilityThe Comparison of Fault Between Negligent and Intentional Actors, 55 LA. L.REV. 1149, 1158 (1995). The negligent tortfeasor is usually in a better position to absorb the risk through market practices such as insurance and pricing. Andrews, supra, at 1159; see also Guido Calabresi & Jon T. Hirschoff, Toward a Test for Strict Liability in Torts, 81 YALE L.J. 1055, 1073-75 (1972) (noting joint and several liability benefits society by effectively placing the burden of risk avoidance on the least cost avoider).[6]
The duty to prevent another's tortious conduct is particularly compelling in the instant case because Camille H. Jescavage and Lorinda S. Noble were both lawyers who represented Tegman to protect her legal interest. They failed to protect Tegman, and this court should not shield them from liability for a harm a judge concluded they had a legal duty to prevent.
Secondly, intentional wrongdoing "differs from negligence not only in degree but in kind, and in the social condemnation attached to it." PROSSER AND KEETON ON THE LAW OF *510 TORTS § 65, at 462 (W. Page Keeton ed., 5th ed.1984). Equitable comparisons of fault or of causation cannot be made between the negligent and intentional parties whose actions combined to harm a fault free plaintiff. Intentional conduct is qualitatively different from mere negligence. Andrews, supra, at 1159; see also Veazey, 650 So.2d at 719. "`[I]ntentional torts are part of a wholly different legal realm and are inapposite to the determination of fault pursuant to RCW 4.22.070(1).'" Morgan, 137 Wash.2d at 896, 976 P.2d 619 (quoting Welch, 134 Wash.2d at 635, 952 P.2d 162).
Thirdly, the majority's approach presents complicated administrative difficulties. See generally Veazey, 650 So.2d 712. No more compelling example of administrative difficulty is offered than where more than one actor, from the same course of conduct, is found to be liable to the plaintiff on both negligent and intentional grounds, and the trier of fact is called upon to distribute liability among all parties.

III.

AN EXAMINATION OF THE 1986 TORT REFORM ACT
Prior to the 1986 modification to joint and several liability, intentional actors were each 100 percent liable to plaintiffs. Intentional actors could not reduce their percentage of liability by contributory or comparative fault. Negligent actors were not entitled to compare their fault to intentional actors to reduce their liability.
This court has previously described the 1981, 1986, and 1987 tort reform acts as the "tort reform process" and held that "[h]armonization of these provisions is appropriate." Morgan, 137 Wash.2d at 893 & n. 2, 976 P.2d 619; see also Welch, 134 Wash.2d at 633, 952 P.2d 162 (noting court's interpretation must give effect to legislative intent and purpose expressed in statutes as a whole); see State v. S.P., 110 Wash.2d 886, 890, 756 P.2d 1315 (1988) (indicating statutes must be read in harmony with other statutes enacted as part of same act); Am. Legion Post No. 32 v. City of Walla Walla, 116 Wash.2d 1, 8, 802 P.2d 784 (1991) (court's primary objective in construing statutes is to carry out the intent of the legislature and in so doing legislative definitions provided in the statutes generally control). We must therefore read the 1981 definition of "fault" and the 1986 refinement of contribution, comparison, and apportionment together. LAWS OF 1981, ch. 27, § 9; LAWS OF 1986, ch. 305, § 401; cf. LAWS OF 1987, ch. 21, § 801.
We have already concluded that the legislature intended to exclude intentional conduct from the definition of "fault" as used in chapter 4.22 RCW. See Schmidt, 115 Wash.2d at 161-62, 795 P.2d 1143; see also Welch, 134 Wash.2d 629, 952 P.2d 162. We now turn specifically to the 1986 amendments.
A. THE LEGISLATURE INTENDED TO PRESERVE THE STATUS QUO FOR FAULT FREE PLAINTIFFS
In 1986, the Washington legislature made significant changes to the State's tort law. RCW 4.22.030 was amended to read:

Except as otherwise provided in RCW 4.22.070, if more than one person is liable to a claimant on an indivisible claim for the same injury, death or harm, the liability of such persons shall be joint and several. (Emphasis added.) Thus, the legislature announced that joint and several liability was the general rule unless an exception was specified in RCW 4.22.070. A careful reading of RCW 4.22.070 reveals no reference to the several liability of intentional actors or several liability for negligent and intentional tortfeasors who together cause an indivisible harm.
Specifically, RCW 4.22.070 sets forth that for "at fault" defendants, liability will generally be several. However, under section.070(1)(b) all the defendants against whom judgment is entered shall be jointly and severally liable to an innocent plaintiff:
The liability of each defendant shall be several only and shall not be joint except:

....
(b) If the trier of fact determines that the claimant or party suffering bodily injury or incurring property damages was not at fault, the defendants against whom *511 judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the claimant's total damages.
RCW 4.22.070(1) (emphasis added). Therefore, the legislature preserved joint and several liability for fault free plaintiffs. This is in due accord with the status quo, the language of the statute and the purposes of the legislature.
B. IN EFFECT, THE MAJORITY INSERTS THE WORDS "FAULT BASED" BEFORE "DEFENDANTS" AND BEFORE "TOTAL DAMAGES"
The legislature could have said that at fault parties were liable for the sum of their damages, but the legislature did not. Fault free claimants are entitled to joint and several liability against all defendants against whom judgment is entered for the sum of their proportionate shares of the claimant's total damages. Defendants include both negligent and intentional defendants and total damages include those damages caused by both defendants who are intentional and negligent actors. The status quo for fault free claimants was maintained.
Further evidence of the legislature's earnest attempt to preserve the status quo for intentional and negligent tortfeasors in relation to one another is found in RCW 4.22.070(1): "The sum of the percentages of the total fault attributed to at-fault entities shall equal one hundred percent." (Emphasis added.) Because the status quo was preserved and intentional tortfeasors remained each 100 percent jointly and severally liable to the plaintiff, it would have thwarted the legislature's purpose to allow at fault defendants the benefits of apportionment and contribution to include intentional actors within the calculation. The legislature intended that intentional tortfeasors continue to be each 100 percent liable to plaintiffs, and that only the sum of the percentages of the nonintentional or at fault parties be considered when totaling the percentages to 100 percent. Such a construction is consistent with the often-quoted Senate Journal, "`[t]he idea is to permit the trier of fact to consider all the conduct short of what would be considered an intentional tort.'" Schmidt, 115 Wash.2d at 162, 795 P.2d 1143 (quoting 1 SENATE JOURNAL, supra, at 635). Intentional actors remain each 100 percent jointly and severally liable for all of an innocent person's damages, and negligent actors remain jointly and severally liable for all of a fault free plaintiff's damages.

IV.

CONSEQUENCES
The majority reads too much into the first sentence of RCW 4.22.070 which speaks to "all actions involving fault." This language is in the context of the general rule. The section before us is in the context of the exception. The legislature carefully preserved the joint and several liability of intentional actors under this exception. Moreover, when the legislature passed RCW 4.22.070, it amended and did not repeal RCW 4.22.030 ("if more than one person is liable ... on an indivisible claim ... liability ... shall be joint and several.").
The majority also converts into an overriding principle of tort analysis the fact that we have acknowledged that the legislature intended several liability to be the general rule for negligent defendants. See majority at 499. However, we have generally made this statement where the plaintiff has not been fault free, or in the context of evaluating the effect of settlements by some of the tortfeasors on joint and several liability. I agree that when the plaintiff is not fault free, the statement is accurate.[7] But that *512 is not the question before us, and our description of the legislative intent in the context of negligent tortfeasors should not become a principle that trumps the actual words of the statute preserving joint and several liability for fault free claimants.
The majority ignores the clear language of the statute which tells us: "Except as otherwise provided in RCW 4.22.070, if more than one person is liable to a claimant on an indivisible claim for the same injury, death or harm, the liability of such persons shall be joint and several." RCW 4.22.030 (emphasis added). It is not proper statutory construction to conclude that the exception is the general rule. If the legislature had intended that negligent actors be permitted to reduce their liability for damages by the amount of damages caused by intentional actors and require segregation of both fault and damages, surely, it would have said so. Further, the legislature would have corrected our subsequent jurisprudence prohibiting negligent actors from reducing their liability by comparing and apportioning the conduct of intentional actors. Welch, 134 Wash.2d 629, 952 P.2d 162; Price, 125 Wash.2d 456, 886 P.2d 556; Schmidt, 115 Wash.2d 148, 795 P.2d 1143; Honegger, 83 Wash.App. 293, 921 P.2d 1080.
Intentional actors will have a holiday from the courts after today. If a plaintiff seeks damages for both negligent and intentional acts, the court will be obliged to segregate, if possible, between the negligently and intentionally caused damages, even though the damages at issue are, by definition, indivisible. A savvy claimant will allege only fault based claims to preserve joint and several liability under the majority's reading of RCW 4.22.070(1). Indeed, negligent tortfeasors are liable for the foreseeable consequences of their acts, including the acts of others. See, e.g., Niece v. Elmview Group Home, 131 Wash.2d 39, 43-44, 929 P.2d 420 (1997). Because we have followed the general rule, we have not allowed negligent actors to apportion liability to intentional actors. See majority at 15; see also Welch, 134 Wash.2d at 636-37, 952 P.2d 162 ("Under the current definition of fault, a defendant is not entitled to apportion liability to an intentional tort-feasor.").

V.

APPLICATION
The trial court found the plaintiff, Tegman, to be a fault free client of the defendants' law clinic. The court also found for Tegman against McClellan and AMI based upon both fraud and negligence, entitling her to nearly $150,000 in exemplary damages from only the intentional actors. The trial court found Tegman was entitled to $15,000 in compensatory damages. The trial court concluded that these damages were indivisible, and Noble did not assign error to this conclusion. Resp't's Supp. Br. at 12 n. 3. The trial court further specifically concluded that all defendants were jointly and severally liable for the approximately $15,000 compensatory damages.
If contribution were an issue in this case, or if Tegman had not been fault free, it might be necessary to remand for apportionment. Cf. Schmidt, 115 Wash.2d at 162, 795 P.2d 1143. But, in my view, since McClellan and AMI are jointly and severally liable to Tegman for their intentional conduct, and since Jescavage, Delores M. Mullen, and Noble are jointly and severally liable to Tegman for their negligent conduct, it is unnecessary to remand. Importantly, Noble does receive a considerable benefit from doctrines that protect the merely negligent tortfeasor; she is responsible for no part of $150,000 damages that the trial court has assessed only against the intentional actors.

CONCLUSION
Consistent with accepted tort law principles, the law in effect in 1986, the overall tort reform scheme, and the plain language of RCW 4.22.070, I would conclude that all of the defendants are jointly and severally liable to Tegman for the sum of their proportionate *513 shares of her total damages. Because the defendants are jointly and severally liable for Tegman's total damages, I would not remand. I would affirm the Court of Appeals and the trial court.
SANDERS, JOHNSON and IRELAND, JJ., concur.
NOTES
[1] In 1997, in federal district court McClellan pleaded guilty to mail fraud and was sentenced to two years' imprisonment.
[2] Mullen also appealed; however, her petition for discretionary review by this court was denied. No further reference to her case is necessary.
[3] Laws of 1986, ch. 305, § 100 states in full:

"Tort law in this state has generally been developed by the courts on a case-by-case basis. While this process has resulted in some significant changes in the law, including amelioration of the harshness of many common law doctrines, the legislature has periodically intervened in order to bring about needed reforms. The purpose of this chapter is to enact further reforms in order to create a more equitable distribution of the cost and risk of injury and increase the availability and affordability of insurance.
"The legislature finds that counties, cities, and other governmental entities are faced with increased exposure to lawsuits and awards and dramatic increases in the cost of insurance coverage. These escalating costs ultimately affect the public through higher taxes, loss of essential services, and loss of the protection provided by adequate insurance. In order to improve the availability and affordability of quality governmental services, comprehensive reform is necessary.
"The legislature also finds comparable cost increases in professional liability insurance. Escalating malpractice insurance premiums discourage physicians and other health care providers from initiating or continuing their practice or offering needed services to the public and contribute to the rising costs of consumer health care. Other professionals, such as architects and engineers, face similar difficult choices, financial instability, and unlimited risk in providing services to the public.
"The legislature also finds that general liability insurance is becoming unavailable or unaffordable to many businesses, individuals, and nonprofit organizations in amounts sufficient to cover potential losses. High premiums have discouraged socially and economically desirable activities and encourage many to go without adequate insurance coverage.
"Therefore, it is the intent of the legislature to reduce costs associated with the tort system, while assuring that adequate and appropriate compensation for persons injured through the fault of others is available."
[4] "Under proportionate liability a negligent party is liable for his [or her] own proportionate share of fault and no more." Kottler v. State, 136 Wash.2d 437, 445, 963 P.2d 834 (1998) (quoting Washburn v. Beatt Equip. Co., 120 Wash.2d 246, 294, 840 P.2d 860 (1992)). RCW 4.22.070 refers to "several" liability as being the same as "proportionate share" liability. This is, as we have previously noted, technically incorrect, but there is no doubt that the legislature created a scheme of proportionate liability. Kottler, 136 Wash.2d at 445 n. 7, 963 P.2d 834.
[5] Our conclusion that RCW 4.22.070(1) does not include intentional acts accords with comments on the statute in the final report of the Senate Select Committee on Tort and Product Reform: "The definition is intended to encompass all degrees of fault in tort actions short of intentionally caused harm. This would include negligence, gross negligence, recklessness, willful and wanton misconduct and strict liability." 1 Senate Journal, 47th Leg., Reg. Sess., at 635 (Wash. 1981).

Commentators report that Washington is 1 of 25 jurisdictions that do not permit the comparison of intentional and negligent conduct. Christopher M. Brown & Kirk A. Morgan, Comment, Consideration of Intentional Torts in Fault Allocation: Disarming the Duty to Protect Against Intentional Conduct, 2 WYO. L.REV. 483, 502 (2002).
[6] As indicated, RCW 4.22.070 provides that there is to be no determination of percentage of total fault attributable to entities immune from liability under Title 51 RCW.
[7] It is apparent, under the express terms of RCW 4.22.070(1)(b), that a fault-free plaintiff might not obtain a "full recovery," i.e., one that "makes plaintiff whole."
[8] The omission of determinations of liability for intentional acts or omissions under RCW 4.22.070(1)(b) is not the only instance where intentional tortfeasors are treated differently for purposes of tort liability. This court in Morgan v. Johnson, 137 Wash.2d 887, 976 P.2d 619 (1999) concluded that comparative fault is, as a general proposition, inapplicable in the context of an intentional tort given the definition of "fault" in RCW 4.22.015; specifically, the court held that the complete defense established in RCW 5.40.060, which may be asserted if plaintiff was intoxicated at the time of plaintiff's injuries or death, and was more than 50 percent at fault, is unavailable in intentional tort actions. See also ESCA Corp. v. KPMG Peat Marwick, 135 Wash.2d 820, 831, 959 P.2d 651 (1998) (the uniform comparative fault statute, RCW 4.22.005, does not include intentionally caused harm).
[1] The majority may be attempting to create a tort system that provides for the allocation of fault to intentional tortfeasors. Some state legislatures have established such a system. For example, North Dakota amended its tort statutes to define fault to "include[ ] acts or omissions that are in any measure negligent or reckless ... or that subject a person to tort liability." N.D. Cent. Code § 32-03.2-01 (1987) (emphasis added). See also Rodenburg v. Fargo-Moorhead Young Men's Christian Ass'n, 2001 ND 139, 632 N.W.2d 407, 416. But our legislature explicitly did not so amend the definition of fault. Had it, then we would be in a very different posture, and the trier of fact would have been called upon to make a single apportionment, not go through the exercise twice.
[2] The Washington legislature adopted the "pure" form of comparative negligence, which permits a plaintiff to recover some damages even though the plaintiff's fault is greater than the negligent defendant or defendants from whom recovery is sought. See Peck, supra, at 237.
[3] Former RCW 4.22.010 provided: "Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages caused by negligence...." (Emphasis added.)
[4] There, we noted:

"The tort is a thing integral and indivisible, and any claim for injuries arising therefrom runs through and embraces every part of the tort. The liability of one cannot be carried into any portion of the joint tort that is not followed by an equal liability of the other tort feasors. Each is liable for the whole, and the injured party may pursue one separately, or he may pursue all jointly, or any number jointly less than the whole number."
J.E. Pinkham Lumber Co., 156 Wash. at 125, 286 P. 95 (quoting Abb v. No. Pac. Ry., 28 Wash. 428, 431, 68 P. 954 (1902)).
[5] According to the Restatement, Florida, Hawaii, Mississippi, Nevada, New Mexico, and New York have explicitly included joint and several liability for intentional actors. Alaska, Arizona, Indiana, Iowa, Nevada, North Dakota, Ohio, Utah, Vermont, Washington, and Wyoming have not explicitly statutorily saved joint and several liability for intentional actors, but all these statutes "are drafted in a way likely to be interpreted as still imposing joint and several liability on intentional tortfeasors." RESTATEMENT, supra, § 12 reporters' note cmt. b. Courts have held that intentional actors are jointly and severally liable in Kansas and California. Kentucky, Oklahoma, and Tennessee have not reached the issue yet, but their opinions are consistent with the other courts cited.
[6] I recognize that the majority opinion does not reach the related, but separate, question of negligent supervision. Cf. Hertog v. City of Seattle, 138 Wash.2d 265, 979 P.2d 400 (1999) (negligent supervision of parolee); Bishop v. Miche, 137 Wash.2d 518, 973 P.2d 465 (1999) (same); Niece v. Elmview Group Home, 131 Wash.2d 39, 43-44, 929 P.2d 420 (1997) (negligent supervision of assisted living employees).
[7] In every case where we have said several liability is the general rule, we have been considering limited questions regarding the liability of negligent or reckless defendants. These cases do not answer the question before the court. See, e.g., Morgan, 137 Wash.2d at 895, 976 P.2d 619 (defendant who committed an intentional tort not entitled to defend on the basis of plaintiff's intoxication); Kottler v. State, 136 Wash.2d 437, 445, 963 P.2d 834 (1998) (no right of contribution when no judgment entered); Welch, 134 Wash.2d at 633, 952 P.2d 162 (negligent tortfeasor only entitled to apportion fault to other at fault defendants, and not to intentional actors); Anderson v. City of Seattle, 123 Wash.2d 847, 850, 873 P.2d 489 (1994) (joint and several liability only applicable when judgment is entered); Gerrard v. Craig, 122 Wash.2d 288, 292, 857 P.2d 1033 (1993) (same); Washburn v. Beatt Equip. Co., 120 Wash.2d 246, 294, 840 P.2d 860 (1992) (no entitlement to apportionment to or contribution from defendants against whom judgment is not entered).