976 P.2d 619 (1999)
137 Wash.2d 887
Mary F. MORGAN, Appellant,
v.
Louis H. JOHNSON, Respondent.
No. 66170-7.
Supreme Court of Washington, En Banc.
Argued January 26, 1999.
Decided May 6, 1999.
*620 Debra Stephens, Bryan P. Harnetiaux, Gary N. Bloom, Spokane, for Amicus Curiae on behalf of Washington State Trial Lawyers Assoc.
Thomas R. Golden, Peter E. Jorgensen, Donovan R. Flora, Seattle, for Appellant.
Charles S. Hamilton, III, Seattle, for Respondent.
TALMADGE, J.
We decide in this case if the intoxication defense established in RCW 5.40.060 applies to an intentional tort. Under the plain language of that statute, the defense may be only asserted where plaintiff was intoxicated at the time of the occurrence which caused the plaintiff's injuries or death, the intoxication was a proximate cause of the injuries or death, and the plaintiff was more than 50 percent at fault. In utilizing "fault," a term of art under RCW 4.22.015, the Legislature plainly meant the intoxication defense is unavailable in intentional tort actions. We reverse the judgment on the verdict of the jury and remand the case to the trial court for a trial confined to the issue of the plaintiff's damages.

ISSUE
Is the intoxication defense provided in RCW 5.40.060 available to an intentional tortfeasor?

FACTS
Mary Morgan and Louis Johnson had a relationship in the 1960's from which a daughter was born. Morgan and Johnson did not marry. They lived separate lives and went their separate ways. The daughter remained solely with Mary Morgan, until the early 1990's when she became curious about her biological father. At that time, the parents re-established contact, but a stormy and complex relationship began, marked by multiple no-contact orders as well as continued consensual social contacts, including a trip to Las Vegas.
The pertinent event to this case occurred in the wee hours of April 16, 1994, in the parking lot of a Seattle restaurant/karaoke bar. The versions told by the parties of the events which occurred that night diverge substantially, but what can be discerned from the trial testimony is both parties appeared at the karaoke bar on the night of April 15, 1994, and despite a no-contact order, drank together.
In the early morning hours of April 16, Morgan and Johnson left the bar. In Johnson's version, Morgan was so drunk she fell down in the parking lot several times injuring herself. Morgan, on the other hand, claims Johnson threatened her with a knife in the bar, forced her outside and dragged her around the parking lot while kicking and striking her. Morgan claims Johnson broke off the interior rearview mirror of his Jeep and then struck her in the face, breaking a tooth. Johnson claims Morgan tore the rearview mirror from the windshield and hit herself with it while she was sitting in the vehicle. Johnson also claims that when the two left the bar, Morgan "went crazy" when he said they were both too drunk to drive, and she began to beat him. Report of Proceedings (10-14-97) at 47. He testified he believed the bruises and marks on Morgan's body were inflicted by someone else.
A police officer responded when Morgan attempted to flag down cars for help. When the officer arrived on the scene, he found Morgan and Johnson both intoxicated. Johnson was sitting on the passenger side of his vehicle and Morgan was leaning into the vehicle from the driver side. They were *621 arguing. Johnson was relatively quiet, but Morgan was hysterical. Johnson did not appear to be injured, but Morgan was missing a tooth, and had cuts on her mouth and a right elbow abrasion. The officer also found the interior rearview mirror and Morgan's broken tooth some 12 feet from the vehicle in the parking lot.
Johnson was arrested at the scene for assault, domestic violence and violation of a no-contact order. In the following days, Morgan received medical attention for her injuries, including surgery for an aggravated back condition and a bridge for her broken tooth.
Subsequently, Morgan filed this action for damages against Johnson for the events of April 16, 1994, alleging Johnson punched and kicked her, struck her in the face with a rearview mirror, and threatened her life with a knife. At trial, Morgan waived any claims based upon negligent conduct and restricted her case to the intentional torts of assault and battery. Morgan timely objected to the trial court's jury instruction based on RCW 5.40.060 and the jury verdict form which allowed the jury to consider her alleged intoxication as a defense to Johnson's alleged intentional tort. The jury answered special interrogatories determining: (1) Louis Johnson intentionally caused bodily harm or intended to cause bodily harm upon Mary Morgan; (2) Johnson's intentional conduct was a proximate cause of injury and damages to Mary Morgan; but (3) Mary Morgan was under the influence of intoxicating liquor which condition was a proximate cause of her injuries and she was more than 50 percent at fault. In accordance with the Special Verdict Form, the jury did not consider damages. Morgan moved for a new trial, which was denied. The trial court entered a judgment on the verdict of the jury from which Morgan appealed, seeking direct review, which we granted.

ANALYSIS
Morgan has properly assigned error to the trial court's instruction based on RCW 5.40.060 and the jury verdict form which allowed the jury to consider her "fault." The gravamen of her appeal is that the intoxication defense of RCW 5.40.060 is inapplicable in a case involving an intentional tort. Therefore, we must analyze the applicability of that statutory defense to the facts here.
Our analysis of RCW 5.40.060 is guided by several well-established principles. First, we interpret statutes de novo. Washington State Coalition for the Homeless v. Department of Soc. & Health Servs., 133 Wash.2d 894, 904, 949 P.2d 1291 (1997); Rettkowski v. Department of Ecology, 128 Wash.2d 508, 515, 910 P.2d 462 (1996). Second, we do not construe unambiguous statutes. Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996); Food Servs. of Am. v. Royal Heights, Inc., 123 Wash.2d 779, 784-85, 871 P.2d 590 (1994); Vita Food Prods., Inc. v. State, 91 Wash.2d 132, 134, 587 P.2d 535 (1978). "In judicial interpretation of statutes, the first rule is `the court should assume that the legislature means exactly what it says. Plain words do not require construction.'" State v. McCraw, 127 Wash.2d 281, 288, 898 P.2d 838 (1995) (quoting Sidis v. Brodie/Dohrmann, Inc., 117 Wash.2d 325, 329, 815 P.2d 781 (1991)). Finally, if a statute is ambiguous, we must construe the statute in a sensible fashion so as to effectuate the intent of the Legislature. In Whatcom County, we held:
If the statute is ambiguous, the courts must construe the statute so as to effectuate the legislative intent. In so doing, we avoid a literal reading if it would result in unlikely, absurd or strained consequences. The purpose of an enactment should prevail over express but inept wording. The court must give effect to legislative intent determined "within the context of the entire statute." Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous. The meaning of a particular word in a statute" is not gleaned from that word alone, because our purpose is to ascertain legislative intent of the statute as a whole."
128 Wash.2d at 546, 909 P.2d 1303 (citations omitted).
In this case, Morgan argues RCW 5.40.060 applies only to cases based on fault as defined *622 in RCW 4.22.015, and is thus inapplicable to intentional torts. Johnson asserts the statute encompasses any personal injury action, relying primarily on our analysis of RCW 5.40.060 in Geschwind v. Flanagan, 121 Wash.2d 833, 854 P.2d 1061 (1993).
In Geschwind, a passenger who was injured in a single vehicle accident brought a negligence action against the driver's estate to recover damages. Both had been drinking. We held (1) a negligent passenger can be more at fault for his or her injuries than a negligent driver, and (2) RCW 5.40.060 prohibited recovery to an intoxicated passenger who is found 70 percent at fault. We stated:
[I]t is now a complete defense to a personal injury or wrongful death action that the person injured or killed was under the influence of alcohol or drugs at the time of the occurrence causing the injury or death if the condition contributed more than 50% to the claimant's injuries....
Id. at 842, 854 P.2d 1061.[1]Geschwind, however, does not conclusively answer the issue present in this case as Geschwind was purely a negligence action, an action based on fault as defined in RCW 4.22.015.
A careful review of the plain language of the statute does answer the question now before us. RCW 5.40.060(1) states in pertinent part:
[I]t is a complete defense to an action for damages for personal injury or wrongful death that the person injured or killed was under the influence of intoxicating liquor or any drug at the time of the occurrence causing the injury or death and that such condition was a proximate cause of the injury or death and the trier of fact finds such person to have been more than fifty percent at fault.

(Emphasis added.) Although fault is not defined in the statute or elsewhere in chapter 5.40 RCW, such term has been defined by the Legislature in the tort reform process (i.e., the 1981, 1986, and 1987 Tort Reform Acts) of which RCW 5.40.060 is a part. See Laws of 1986, ch. 305, § 902 (enacting 5.40.060 as part of the chapter's "Tort Law Revisions"). By specifically referencing "fault" in RCW 5.40.060, the Legislature linked RCW 5.40.060 with tort reform legislation regarding comparative fault appearing in chapter 4.22 RCW, and we should look there for its definition.[2]
As part of the tort reform process, the 1981 Legislature enacted RCW 4.22.015 defining "fault" as the term is used in the Tort Reform Act of 1981:
"Fault" includes acts or omissions, including misuse of a product, that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability or liability on a product liability claim. The term also includes breach of warranty, unreasonable assumption of risk, and unreasonable failure to avoid an injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.
A comparison of fault for any purpose under RCW 4.22.005 through 4.22.060 shall involve consideration of both the nature of the conduct of the parties to the action and the extent of the causal relation between such conduct and the damages.
The statute does not mention intentional torts. Our prior cases interpreting the statute confirm this omission was intentional. In Schmidt v. Cornerstone Invs., Inc., 115 Wash.2d 148, 161-62, 795 P.2d 1143 (1990), *623 citing the Senate Select Committee on Tort and Product Liability Reform final report, we stated:
The definition is intended to encompass all degrees of fault in tort actions short of intentionally caused harm. This would include negligence, gross negligence, recklessness, willful and wanton misconduct and strict liability.... The idea is to permit the trier of fact to consider all the conduct short of what would be considered an intentional tort and make a reduction of the plaintiff's recovery for his or her share. In making its determination the trier of fact may take into consideration both the nature of conduct and the causal relationship between that conduct and the harm. This will mean, for example, that plaintiff's contributory negligence may not reduce recovery as much in a strict liability action as it would in a negligence action.
Schmidt, 115 Wash.2d at 161-62, 795 P.2d 1143 (emphasis added) (citing SENATE JOURNAL, 47th Leg., Reg. Sess. 635 (Wash.1981)). See also Honegger v. Yoke's Washington Foods, Inc., 83 Wash.App. 293, 297, 921 P.2d 1080 (1996) (noting the Legislature's omission of intentional torts from the definition of fault was purposeful, and concluding a plaintiff's contributory fault cannot be used to reduce a defendant's liability for intentional torts such as assault and battery), review denied, 131 Wash.2d 1016, 936 P.2d 416 (1997).
Furthermore, the linkage of RCW 5.40.060 to chapter 4.22 RCW is apparent from its application. The very nature of the intoxication defense involves a comparative fault analysis. It requires the trier of fact to determine if the plaintiff's (intoxicationbased) "fault" is greater than 50 percent. In doing so, the trier of fact must necessarily make at least a rough calculation of the "fault" of the defendant and other entities involved. Thus, the statute applies to actions involving fault of more than one entity. Notably, RCW 4.22.070, the centerpiece of statutory comparative fault analysis in the 1986 Tort Reform Act, addresses "all actions involving fault of more than one entity ..." Thus, RCW 5.40.060 is more properly viewed as part of comprehensive tort reform, at the center of which is the concept of "fault." Use of the term "fault" in characterizing an intoxicated plaintiff's conduct suggests RCW 5.40.060 was intended to work within Washington's statutory comparative fault scheme to alter the consequences of "comparative fault." The fact such comparative fault scheme specifically excludes intentional conduct from its purview suggests RCW 5.40.060 was not intended to apply to such cases.
Declining to apply this fault-based defense to intentional torts would also be consistent with our case law addressing Washington's comparative fault system. In Welch v. Southland Corp., 134 Wash.2d 629, 635, 952 P.2d 162 (1998), a convenience store patron sued the store for personal injuries he sustained when an unknown assailant robbed the patron as he was leaving the store. The patron appealed the trial court's denial of his motion for partial summary judgment as to store's affirmative defense that any fault on the store's part should be apportioned with the unknown assailant. We reversed, holding intentional acts are not included in the statutory definition of "fault" in the contributory and comparative fault statutes, and, thus, a negligent tortfeasor is not entitled to apportion liability to an intentional tortfeasor. Relying on prior decisions, we noted the Legislature clearly intended to exclude intentional conduct from the definition of fault, and further noted "intentional torts are part of a wholly different legal realm and are inapposite to the determination of fault pursuant to RCW 4.22.070(1)." Id. at 635, 952 P.2d 162 (relying on Schmidt, 115 Wash.2d at 161-62, 795 P.2d 1143; Price v. Kitsap Transit, 125 Wash.2d 456, 464, 886 P.2d 556 (1994); and Honegger, 83 Wash.App. 293, 921 P.2d 1080). See also ESCA Corp. v. KPMG Peat Marwick, 135 Wash.2d 820, 831, 959 P.2d 651 (1998) (fault does not include intentionally caused harm); Will v. United States, 152 F.3d 932 (9th Cir.1998) (citing Welch, the Ninth Circuit found the district court erred in apportioning a percentage of fault to unidentified vandals, i.e., the intentional tortfeasors, and reducing the potential amount of recovery accordingly). Thus, comparative fault is inapplicable in the context of an intentional tort.
*624 The Legislature enjoys the power to define and change tort law in our state. Geschwind, 121 Wash.2d at 841, 854 P.2d 1061. In exercising that prerogative, the Legislature has chosen to curtail the rights of certain intoxicated persons in enacting RCW 5.40.060. Similarly, the Legislature could decide to apply comparative fault principles to intentional torts, but it has not done so expressly in RCW 4.22 or RCW 5.40.060. Given the Legislature's inclusion of "fault" as an operative element in the statutory intoxication defense, and that body's purposeful exclusion of intentional actions from the definition of such term, we accordingly hold the intoxication defense available under RCW 5.40.060 does not apply to intentional torts.

CONCLUSION
By its plain language, the intoxication defense available under RCW 5.40.060 does not apply to intentional torts. The jury determined Louis Johnson was guilty of an intentional tort against Mary Morgan and that conduct proximately resulted in her injuries. Johnson did contest those jury determinations.[3] Accordingly, we reverse the trial court's judgment and remand the case for retrial confined to the issue of Mary Morgan's damages.
GUY, C.J., and DURHAM, SMITH, JOHNSON, MADSEN, ALEXANDER, SANDERS and IRELAND, JJ., concur.
NOTES
[1] In response to our holding in Geschwind, the Legislature amended RCW 5.40.060 by carving out an exception for the fact pattern present in that case. See Laws of 1994, ch. 275, § 30.
[2] Harmonization of these provisions is appropriate. See, e.g., Welch v. Southland Corp., 134 Wash.2d 629, 633, 952 P.2d 162 (1998) (noting court's interpretation must give effect to legislative intent and purpose expressed in statutes as a whole); Blair v. Washington State Univ., 108 Wash.2d 558, 576-77, 740 P.2d 1379 (1987) (harmonizing general and specific provisions appearing in separate chapters of RCW); State v. S.P., 110 Wash.2d 886, 890, 756 P.2d 1315 (1988) (indicating statutes must be read in harmony with other statutes enacted as part of same act); American Legion Post No. 32 v. City of Walla Walla, 116 Wash.2d 1, 8, 802 P.2d 784 (1991) (court's primary objective in construing statutes is to carry out the intent of the Legislature and in so doing legislative definitions provided in the statutes generally control).
[3] Morgan confined her case to an intentional tort theory, dismissing her negligence claim. Johnson defended solely on the basis of the defense offered in RCW 5.40.060. In the appropriate case, a number of additional common law defenses to assault that could involve the plaintiff's intoxication may be available. See, e.g., 16 David K. DeWolf & Keller W. Allen, Washington Practice: Tort Law and Practice §§ 9.41-9.47, at 233-38 (1993), (discussing consent, defense of self and others, and other statutory and common law defenses to intentional torts).