[No. 33080-6-II.   Division Two.   October 24, 2006.]

ELISA M. HICKLY, *Appellant*, v. BRIAN R. BARE ET AL., *Respondents*.

*Kari I. Lester* (of *Ben F. Barcus & Associates, P.L.L.C.*), for appellant.

*Timothy Malarchick* and *Timothy R. Gosselin*, for respondents.

¶1 HUNT, J. — Elisa M. Hickly appeals the verdict in her personal injury action against Brian and Jeffrey Bare. The jury apportioned 35 percent fault to her and reduced her damages accordingly for voluntarily riding in an automobile driven and crashed by Brian,[1] who was intoxicated. Hickly's primary argument is that RCW 5.40.060(2) precluded submitting her comparative fault to the jury because there was no showing that her actions caused the crash in which she was injured. Hickly argues that she did not receive a fair trial because the court (1) improperly instructed the jury on her contributory negligence and her preexisting injury, (2) refused her request to instruct on spoliation of evidence, (3) abused its discretion in granting the Bares' motion to exclude their previous driving while under the influence (DUI) records, and (4) erroneously denied her motion for mistrial.

¶2 Holding that RCW 5.40.060's plaintiff's intoxication defense does not apply in the absence of proof of Hickly's intoxication and that, therefore, the jury was entitled to consider her contributory negligence, we affirm.

## FACTS

### I. THE 2001 ACCIDENT

¶3 On March 4, 2001, Brian Bare, his brother Jeffrey Bare, and Brian's longtime friend Elisa Hickly were celebrating Brian's 25th birthday with Brian's friend Nate Sears, Brian's father and sister, and several other friends at a bar. Hickly had previously asked and ascertained that Jeffrey would be their designated driver that evening.

¶4 Sharing a table, both Brian and Hickly drank beer that evening: Brian consumed at least six beers and Hickly consumed at least three to five beers. According to Hickly, she did not see Brian during much of the evening, he was at the table only 25 percent of the time, and she did not know

---

[1] We use the Bares' first names for clarity.

how much he drank. According to Brian, he was away from the table where Hickly was sitting at least half of the time.

¶5 Brian, Jeffrey, and Hickly had been at the bar for about four and one half hours when they decided to leave. Jeffrey, the designated driver for the evening, had passed out, was then awakened, but was unable to drive. Brian also felt intoxicated but felt "good enough to drive."

¶6 Shortly before they left the bar, Hickly spoke with Brian about whether he was able to drive.[2] According to Hickly, Brian "seemed fine to [drive]," had control of his "faculties," walked fine, was able to handle his keys and functions of the vehicle, and did not slur his speech. Report of Proceedings (RP) (Mar. 8, 2005) at 639. According to Jeffrey, neither he nor Brian was capable of driving a car. Nevertheless, Hickly and Jeffrey agreed to ride as passengers, with Hickly riding in the front passenger seat, Jeffrey in the backseat, and Brian driving.

¶7 About half a mile from the bar, Brian lost control of the vehicle, barely missed a telephone pole, and veered off the road. The vehicle flipped three or four times. Hickly injured her neck and lower back.

¶8 Brian Peterson, who was driving along the same road, saw the aftermath of the accident, pulled over, checked to see if anyone was hurt, and called 911. As Peterson approached, he observed Brian and Hickly arguing. Peterson could smell alcohol emanating from Brian's breath; Brian appeared impaired or under the influence of alcohol.

¶9 When Peterson went to check on Jeffrey, Brian fled into the surrounding woods and called Sears, who picked up Brian at a nearby gas station. According to Sears, Brian was disheveled, "very intoxicated," smelled heavily of alcohol, and slurred his speech. RP (Mar. 9, 2005) at 785.

---

[2] Brian could not remember whether he had had this discussion with Hickly, but Hickly clearly remembered it.

II. Subsequent Events

A. Brian's Other DUIs

¶10 Around two weeks after the accident, on March 21, 2001, Brian was arrested for DUI with a blood alcohol level of 0.25. He pleaded guilty to DUI and negligent driving. As part of a deferred prosecution agreement, Brian admitted to having an alcohol problem. Thereafter, in 2003, Brian committed and pleaded guilty to two additional DUIs.

B. Hickly's 2003 Accident

¶11 On October 24, 2003, about two years after the 2001 accident in which Brian had been driving and Hickly injured, Hickly was involved in another accident, in which a different driver rear-ended her vehicle. Hickly sought treatment for back injuries she sustained in this second accident.

C. Hickly's Medical Treatment

¶12 Following the 2001 accident, Hickly had pain in her head, hand, back, neck, and shoulders. She sought treatment from chiropractor Dr. Gregory Wiles, who noted that Hickly had injured her cervical and lumbar spine. Hickly also underwent physical therapy.

¶13 Following the 2003 accident, Hickly stated that she had a flare-up of pain that was not very different from that following the 2001 accident. She asserted that she did not suffer an additional injury as a result of the 2003 accident.

¶14 Another chiropractor, Dr. Kevin Small, examined Hickly on January 21, 2005. He also reviewed her medical history and records, including Dr. Wiles's records. According to Dr. Small, Hickly had a "fairly good recovery" from the 2001 accident, although she was not completely asymptomatic. RP (Mar. 9, 2005) at 869.

III. Lawsuit

¶15 On February 27, 2004, Hickly filed a personal injury action against Brian and Jeffrey for injuries she sustained in the 2001 accident. She claimed that (1) Brian had negligently operated the vehicle and had failed to keep a proper lookout and (2) Jeffrey had negligently entrusted Brian with driving his vehicle.

¶16 The Bares admitted that Brian had operated the vehicle negligently and had caused the accident. But as an affirmative defense, they claimed that Hickly had also negligently caused or contributed to her own injuries by agreeing to ride with them while they were intoxicated. Thus, the only issue before the jury was apportionment of fault and damages.

¶17 The parties disputed (1) whether Hickly should have reasonably known that Brian was intoxicated and unable to drive and (2) whether Hickly's ongoing condition, for which she sought damages at trial, had been caused by the 2001 accident, the 2003 accident, or both.

A. Pretrial Motions

¶18 The trial court granted Hickly's motion to exclude evidence of her prior unrelated injuries, including an industrial insurance claim that occurred in 1998 and the resulting medical treatment she had received.

¶19 The trial court also granted the Bares' motion to exclude their previous citation and arrest records for DUI and negligent driving, treatments for alcohol or substance abuse, and unrelated vehicle accidents.[3]

B. Motion for Mistrial

¶20 At trial, Dr. Small, the Bares' expert witness, testified, in part, as follows:

---

[3] In granting this motion, the trial court noted that the Bares' admissions to being alcoholics, a prerequisite for deferred prosecution, was highly prejudicial.

Q. In addition to conducting the examination of Ms. Hickly, did you also have an opportunity to review certain records provided by my office to your office regarding treatment for Ms. Hickly that she had received in the past?

A. Yes, I did.

Q. And those records were basically beginning at what point in time?

A. The records began—actually there were a few records from a couple of injuries in the late 90's. There were some records from 2001 when she started seeing Dr. Wiles. I saw Dr. Wiles' records through 2001, 2002.

RP (Mar. 9, 2005) at 821.

¶21 Hickly asked for a "sidebar," during which she immediately requested a mistrial. She argued that Dr. Small's reference to her injuries in the 1990s violated the court's pretrial order excluding information about injuries before the 2001 accident. Hickly declined the trial court's offer to give the jury a curative instruction, asserting that no instruction would cure the prejudice that Dr. Small's testimony had caused. Hickly also declined the trial court's offer to allow Dr. Small to testify that her 1990s injuries had no bearing on his opinion and assessment, as he had indicated during an offer of proof.

¶22 Hickly argued that the trial court should either grant her a new trial or exclude Dr. Small's testimony altogether. The trial court denied both motions.

C. Jury Instructions

¶23 The trial court provided several related jury instructions on contributory negligence/comparative fault. Hickly took exception to these instructions, arguing that RCW 5.40.060(2) precluded the Bares from claiming that she was contributorily negligent.

¶24 In rejecting Hickly's argument, the trial court ruled that (1) RCW 5.40.060 applies only when the issue is whether Hickly's contributory negligence/comparative fault is a complete defense under the statute and (2) RCW 5.40.060

does not apply in those other circumstances when Hickly's contributory negligence/comparative fault is available as a general defense.

¶25 Hickly then requested an instruction on spoliation, based on Brian's having fled the scene of the 2001 accident. She argued that (1) Brian's flight prevented her from obtaining evidence of his intoxication or sobriety and (2) if the trial court allowed the jury to consider her contributory negligence, it should also allow them to consider spoliation. The trial court rejected Hickly's request for a spoliation instruction.

¶26 The trial court gave the jury two instructions on preexisting injuries. Hickly took exception to both instructions.

¶27 The jury found Brian and Jeffrey 60 and 5 percent at fault, respectively, in negligently causing Hickly's injuries, and Hickly 35 percent at fault in contributing to her own injuries.

¶28 Hickly appeals.

## ANALYSIS

### COMPARATIVE FAULT

¶29 Hickly argues that the trial court erred in allowing the jury to consider whether she had negligently contributed to her own injuries. She contends that RCW 5.40.060(2) abolished comparative fault as a defense where drivers are sued by passengers who did nothing to cause the accidents in which plaintiffs were injured. This argument fails. RCW 5.40.060 does not apply here because a necessary triggering event, plaintiff Hickly's intoxication, was not shown.

### A. Background

¶30 Washington courts have long held that passengers may be contributorily negligent in causing their own

injuries by voluntarily riding in a car with a driver they know, or reasonably should know, is intoxicated. *See, e.g., Geschwind v. Flanagan,* 121 Wn.2d 833, 838, 854 P.2d 1061 (1993) (personal injury action by intoxicated passenger against intoxicated driver; jury found passenger 70 percent at fault for own injuries and rendered judgment for defendant driver; holding that plaintiff passenger's own voluntary actions may increase risk of injury such that plaintiff is primarily responsible for own injuries).

■ ¶31 Our legislature enacted the tort reform act (TRA) (LAWS OF 1981, ch. 27) to create a fairer and more equitable distribution of liability among multiple parties with varying degrees of fault in causing a plaintiff's injuries. RCW 4.22.005[4] (contributory/comparative fault), 4.22.015 ("fault" defined), 4.22.070 (percentage of fault of more than one party); *Christensen v. Royal Sch. Dist. No. 160,* 156 Wn.2d 62, 66, 124 P.3d 283 (2005). As part of this tort reform process, our legislature also enacted RCW 5.40.060, setting forth limited circumstances in which a defendant may use the plaintiff's intoxication as a complete defense to an action for damages.[5] Enactment of RCW 5.40.060, however, did not eradicate comparative fault in circumstances where RCW 5.40.060 does not apply. *See, e.g., Tegman v. Accident & Med. Investigations, Inc.,* 150 Wn.2d 102, 116, 75 P.3d 497 (2003); *Keller v. City of Spokane,* 146 Wn.2d 237, 244, 44 P.3d 845 (2002).

---

[4] For example, a plaintiff may be negligent in failing to use due care for her own protection, while a defendant may be negligent in failing to use due care for the safety of others. Under the comparative fault system established in RCW 4.22.005, the finder of fact must compare the respective faults of the plaintiff and defendant and determine the degree to which the plaintiff failed to protect herself. If the plaintiff is at fault, she may recover damages proportionate to the defendant's share of the fault.

[5] "[T]he Legislature has chosen to curtail the rights of certain intoxicated persons by enacting RCW 5.40.060." *Morgan v. Johnson,* 137 Wn.2d 887, 896, 976 P.2d 619 (1999) (holding that the legislature intended RCW 5.40.060's comparative fault principles and intoxication defense to apply to negligent or reckless torts but not to intentional torts). *Id.* at 896.

## B. RCW 5.40.060

¶32 The parties dispute the meaning of RCW 5.40-.060(2), which Washington courts have not yet directly interpreted. Thus, we address an issue of first impression. In so doing, however, we first address whether the statute applies.

### 1. Standard of Review

■■ ¶33 Statutory interpretation is a question of law, which courts review de novo. *Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d 392, 396, 103 P.3d 1226 (2005). Our primary goal in interpreting statutes is to ascertain the legislature's intent. *Schrom v. Bd. for Volunteer Fire Fighters*, 153 Wn.2d 19, 25, 100 P.3d 814 (2004).

■ ¶34 Where a statute is clear and unambiguous, we first look to the plain meaning of the words in light of the statute as a whole. *Schrom*, 153 Wn.2d at 25. A statute is ambiguous if it can reasonably be interpreted in two or more ways, but it is not ambiguous simply because different interpretations are conceivable. *Agrilink*, 153 Wn.2d at 396.

### 2. Plain Language

¶35 Because the language of RCW 5.40.060(2) is clear and unambiguous, we look to its plain meaning. RCW 5.40.060 provides:

> (1) *Except as provided in subsection (2)* of this section, it is a *complete defense* to an action for damages for personal injury or wrongful death that the *person injured or killed was under the influence of intoxicating liquor* or any drug at the time of the occurrence causing the injury or death and that such condition was a proximate cause of the injury or death and the trier of fact finds such person to have been more than fifty percent at fault. The standard for determining whether a person was under the influence of intoxicating liquor or drugs shall be the same standard established for criminal convictions under RCW 46.61.502, and evidence that a person was under the influence

of intoxicating liquor or drugs under the standard established by RCW 46.61.502 shall be conclusive proof that such person was under the influence of intoxicating liquor or drugs.

(2) In an action for damages for personal injury or wrongful death that is brought against the driver of a motor vehicle who was under the influence of intoxicating liquor or any drug at the time of the occurrence causing the injury or death and whose condition was a proximate cause of the injury or death, *subsection (1)* of this section *does not create a defense* against the action *notwithstanding that the person injured* or killed was *also under the influence* so long as *such person's condition was not a proximate cause* of the occurrence causing the injury or death.

RCW 5.40.060 (emphasis added).

¶36 Under the plain language of RCW 5.40.060(1), where the *plaintiff* was intoxicated, the plaintiff's intoxication is a complete defense precluding recovery of damages altogether if the defendant establishes that (1) the plaintiff was under the influence of alcohol or drugs when injured, (2) the plaintiff's intoxication proximately caused her own injuries, and (3) the plaintiff was more than 50 percent comparatively at fault in causing her injuries. *Edgar v. City of Tacoma*, 129 Wn.2d 621, 628-29, 919 P.2d 1236 (1996); *Estate of Kelly v. Falin*, 127 Wn.2d 31, 40, 896 P.2d 1245 (1995); *Geschwind*, 121 Wn.2d at 840. Subsection (1) does not mention what happens if the defendant driver is also intoxicated. Rather, subsection (2) addresses that situation.

¶37 Unlike subsection (1), subsection (2), by its plain language, is triggered by the defendant's intoxication. Nonetheless, like subsection (1), application of subsection (2) is also predicated on the plaintiff's intoxication. *See, e.g.*, *Geschwind*, 121 Wn.2d 833 (uncontroverted that plaintiff, as well as defendant, was intoxicated; at issue was causation). But where the defendant driver's intoxication proximately caused the "occurrence" in which plaintiff was injured, subsection (2) of RCW 5.40.060 limits application of subsection (1)'s complete defense to those circumstances in which the plaintiff's intoxication was also a proximate cause of the "occurrence."

Thus, subsection (2) does not provide an intoxicated driver with a statutory subsection (1) defense against an intoxicated plaintiff's claim for damages unless the plaintiff's intoxication caused the injurious accident.

¶38 As our Supreme Court has noted, in another context,

> The 1986 TRA created a statutory defense in personal injury and wrongful death actions where the plaintiff was intoxicated (as defined by RCW 46.61.502). Such intoxication is a complete defense if the trier of fact finds that (1) the plaintiff was more than 50 percent at fault, and (2) the plaintiff's intoxication was a proximate cause of the plaintiff's injuries. RCW 5.40.060.

*Edgar*, 129 Wn.2d at 628-29 (focusing on percentage apportionment of fault between intoxicated driver and intoxicated passenger, not on the meaning or application of subsection (2) of RCW 5.40.060, where the plaintiff passenger was not also intoxicated).[6]

¶39 Here, there was evidence that Hickly had been drinking alcohol earlier in the evening before getting into the car driven by intoxicated Brian, whose negligent driving was the sole cause of the accident after his intoxicated brother entrusted him with the car. But there was no evidence that Hickly was also intoxicated or that her actions contributed to causing the accident. Thus, as the trial court properly ruled, under its plain language, RCW 5.40.060(2) did not apply. And, therefore, this statute did not provide Brian with a complete defense to Hickly's personal injury action.

---

[6] *See also Morgan v. Johnson*, 137 Wn.2d 887, 893 & n.1, 976 P.2d 619 (1999), in which our Supreme Court addressed the legislature's enactment of subsection (2) of RCW 5.40.060 in response to the court's *Geschwind* holding and held that this statutory defense does not apply to intentional torts (domestic violence assault), as distinguished from merely negligent or reckless torts:

> We decide in this case if the intoxication defense established in RCW 5.40.060 applies to an intentional tort. Under the plain language of that statute, the defense may be asserted only where plaintiff was intoxicated at the time of the occurrence which caused the plaintiff's injuries or death, the intoxication was a proximate cause of the injuries or death, and the plaintiff was more than 50 percent at fault. In utilizing "fault," a term of art under RCW 4.22.015, the Legislature plainly meant the intoxication defense is unavailable in intentional tort actions.

*Morgan*, 137 Wn.2d at 889.

¶40 We hold, therefore, that the plaintiff's intoxication is a prerequisite to application of RCW 5.40.060's statutory defense. Where, as here, the plaintiff passenger was not intoxicated, subsection (2) of RCW 5.40.060 does not apply to provide an intoxicated defendant with a statutory defense to the plaintiff's damages action.

¶41 This holding does not mean, however, that a plaintiff's condition or actions cannot give rise to a defense independent of RCW 5.40.060. We now turn to the common law and chapter 4.22 RCW.

## C. Chapter 4.22 RCW

¶42 Hickly argues that RCW 5.40.060(2) abolished comparative fault as a defense for intoxicated drivers sued by passengers who did not proximately cause the accident.[7] This argument fails.

## 1. Background

[T]he linkage of RCW 5.40.060 to chapter 4.22 RCW is apparent from its application. The very nature of the intoxication defense involves a comparative fault analysis. It requires the trier of fact to determine if the *plaintiff's (intoxication-based) "fault"* is greater than 50 percent. . . . Use of the term "fault" in characterizing an *intoxicated plaintiff's* conduct suggests *RCW 5.40.060 was intended to work within Washington's statutory comparative fault scheme to alter the consequences of "comparative fault."*

*Morgan v. Johnson*, 137 Wn.2d 887, 895, 976 P.2d 619 (1999) (emphasis added).

¶43 In promulgating RCW 5.40.060, the legislature did not abolish the defense of a plaintiff's nonintoxication-based contributory fault.[8] Rather, as Brian correctly ar-

---

[7] Hickly is partly correct in that, as we note above, because Brian did not show that she was intoxicated, he could not assert her unproven intoxication-based contributory negligence as a defense under RCW 5.40.060(2).

[8] *See*, for example, *Morgan*, 137 Wn.2d at 895, in which the Supreme Court explains Washington's statutory comparative fault scheme, which operates inde-

gues, RCW 5.40.060(2) merely "limits the defense created by subsection 1." Br. of Resp't at 12. In addition, as our Supreme Court has explained, the legislature's adoption of comparative fault did not create or enhance a defendant's prior common law duty of care. " 'Rather, recovery is now permitted where it was previously denied after liability has been established.' " *Keller v. City of Spokane*, 146 Wn.2d 237, 244, 44 P.3d 845 (2002) (quoting *Hansen v. Wash. Natural Gas Co.*, 95 Wn.2d 773, 778, 632 P.2d 504 (1981)).

¶44 The Supreme Court has more recently reaffirmed that comparative negligence persists in the state of Washington:

> "Initially through the adoption of comparative negligence between plaintiffs and defendants that have concurrently caused the harm, and subsequently through the enactment of RCW 4.22.070 to govern the accountability among multiple tortfeasors contributing to a single injury, Washington has adopted comparative fault as the touchstone for apportionment of responsibility in damages."

*Tegman*, 150 Wn.2d at 117 (quoting Gregory C. Sisk, *Interpretation of the Statutory Modification of Joint and Several Liability: Resisting the Deconstruction of Tort Reform*, 16 U. PUGET SOUND L. REV. 1, 41 (1992)).[9]

---

pendently of RCW 5.40.060 whenthis latter statute does not apply, as is the case with intentional torts.

[9] *Tegman*, 150 Wn.2d at 116-17:

When this State's legislature rejected the absolute bar of contributory negligence to recovery by negligent plaintiffs and adopted comparative negligence principles, Laws of 1973, 1st Ex. Sess., ch. 138, § 1, the "premise that wrongs were inherently indivisible or that responsibility could not rationally be apportioned among multiple parties fell into disfavor." Gregory C. Sisk, *The Constitutional Validity of the Modification of Joint and Several Liability in the Washington Tort Reform Act of 1986*, 13 U. PUGET SOUND L. REV. 433, 437 (1990).

> Through the adoption of comparative fault, the Washington State Legislature rejected the "tortured analysis" that "harm which is indivisible leaves no logical basis for apportionment." The unitary nature of the harm and the assignment of responsibility are two separate matters. When multiple proximate causes have been determined for a single injury, the trier of fact still must determine and apportion the responsibility based upon the varying degrees of culpability and causation among the actors. As commentators have explained: "It does not follow that simply because the harm is

## 2. Plain language

¶45  In enacting RCW 4.22.070, the legislature expressly provided for apportionment of fault among multiple contributors to a plaintiff's injuries, including the plaintiff herself:

> (1) In all actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages except entities immune from liability to the claimant under Title 51 RCW. . . . *The entities whose fault shall be determined include the claimant or person suffering personal injury* . . . , defendants, [and] entities with any other individual defense against the claimant . . . . Judgment shall be entered against each defendant except those who . . . have prevailed on any other individual defense against the claimant in an amount which represents that party's proportionate share of the claimant's total damages.

RCW 4.22.070 (emphasis added).

¶46  The legislature's definition of "fault" further evinces its intent that plaintiffs such as Hickly, though not intoxicated for purposes of RCW 5.40.060's statutory defense, could nevertheless have their damages reduced for their own contributory actions, whether alcohol-related or not:

> "Fault" includes acts or omissions, . . . that are in any measure negligent or reckless toward the person . . . . The term also includes . . . *unreasonable assumption of risk, and unreasonable failure to avoid an injury* or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.
>
> A comparison of fault for any purpose under RCW 4.22.005 through 4.22.060 shall involve consideration of both the nature

---

indivisible that there is no basis for apportionment. It is the responsibility for causing the harm which should be the focus of the inquiry."

Gregory C. Sisk, *Interpretation of the Statutory Modification of Joint and Several Liability: Resisting the Deconstruction of Tort Reform*, 16 U. Puget Sound L. Rev. 1, 41 (1992). Under comparative fault principles, the trier of fact must allocate fault between a negligent plaintiff and a negligent defendant. RCW 4.22.005.

of the conduct of the parties to the action and the extent of the causal relation between such conduct and the damages.

RCW 4.22.015 (emphasis added). Thus, as here, in a fault-based action for damages for personal injury, RCW 4.22.005 operates to reduce the plaintiff's damages award in proportion to her contributory fault. Unlike the operation of RCW 5.40.060, however, even though RCW 4.22.005 operates to reduce her recovery, it does not bar her recovery altogether.

¶47 We hold that only when the plaintiff's intoxication is a proximate cause of the injurious accident does RCW 5.40.060(2) come into play to bar her recovery in an action for damages against the intoxicated driver. But because the facts here do not trigger its application, RCW 5.40.060 cannot operate to abolish comparative fault as a defense for Brian.

## D. Jury Instructions

¶48 Challenging jury instructions 5, 8-13, and 17, Hickly argues that the trial court did not have sufficient evidence to submit the issue of her contributory negligence to the jury. We disagree.

¶49 According to Sears and Peterson, Brian was intoxicated, smelled of alcohol, slurred his speech, and had consumed several beers before the accident. According to Hickly, she and Brian had eaten dinner before arriving at the bar, she saw him for at least part of the four-and-a-half-hour period during which the two were at the bar, she saw Brian drink beer and, shortly before the accident, she asked him whether he was able to drive. Even Brian recognized that he was intoxicated but told Hickly he was "okay to drive." These witnesses' testimonies supplied sufficient evidence to support the trial court's instructing the jury on whether Hickly negligently decided to ride as a passenger with Brian when he drove his car away from the bar after consuming alcohol over a several-hour period.

¶50 The jury was entitled to consider whether Hickly was contributorily negligent when she voluntarily rode

with Brian driving his car if she knew, or should reasonably have known, that he was intoxicated. RCW 4.22.005; *see, e.g.*, *Tegman*, 150 Wn.2d 109-10. We hold, therefore, that the trial court did not abuse its discretion in instructing the jury on contributory negligence.[10]

¶51 Affirmed.

¶52 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

VAN DEREN, A.C.J., and ARMSTRONG, J., concur.

Review denied at 161 Wn.2d 1011 (2007).

---

[10] The trial court reasoned that a contributory negligence instruction was warranted because (1) RCW 5.40.060 applies only when there is an issue of whether contributory negligence/comparative fault is a complete defense and (2) it does not apply when there is an issue of whether contributory negligence/comparative fault may be used generally as a defense under the circumstances. This ruling is consistent with our holding that RCW 5.40.060 simply does not apply here and, therefore, RCW 4.22.005 and the common law control.