IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CAROL MATTHEWS, a single person, | ) | No. 79866-9-I |
| | ) | |
| Respondent/Cross Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| MICHELLE WESTFORD, a single | ) | UNPUBLISHED OPINION |
| person and Trustee of the ALAKA | ) | |
| TRUST, and the ALAKA TRUST, | ) | |
| | ) | |
| Appellants/Cross Respondents. | ) | |

BOWMAN, J. — Carol Matthews brought a foreclosure action against Michelle Westford to enforce the terms of a promissory note and deed of trust. Westford raised an affirmative defense of offset based on fraud, alleging that Matthews intentionally misrepresented the parcel as waterfront property. The court foreclosed on the property but offset the judgment, finding that Matthews negligently misrepresented the boundaries of her property. Westford appeals the trial court's application of prejudgment interest to Matthews' damages and the court's order awarding Matthews attorney fees. Matthews cross appeals the timeliness of Westford's defense, the trial court's sua sponte amendment of Westford's claim from intentional to negligent misrepresentation, and the sufficiency of the evidence supporting the amended claim. We conclude that Westford's affirmative defense is not time barred but that the trial court erred in

amending her claim from intentional to negligent misrepresentation without notice to the parties. We reverse and remand.

FACTS

In August 2006, licensed real estate agent Michael Westford saw a "For Sale by Owner" sign listing "[Six] Acres on Padilla Bay." Michael[1] contacted the owner, Carol Matthews, for a property tour.

According to Michael, Matthews told him the western property line went to the water and included 900 feet of waterfront. At some point, Matthews gave Michael a property brochure prepared by a former listing agent. The brochure stated that the property included "350 feet of low bank waterfront."

Michael went to the county assessor's office and looked at maps of the property. He found nothing contradicting what Westford told him about the boundaries of the parcel. Michael prepared a purchase and sale agreement and offered Westford $500,000 for the property.

Michael and Matthews signed the purchase and sale agreement in September 2006. The agreement included a legal description of the property, stating that the boundary line ran from "an existing fence" and continued to "the centerline of an existing dike." The description did not mention a waterfront boundary.

Just before closing, Michael and his wife Connie Westford asked Matthews if she would agree to sell the property to their daughter Michelle Westford in their place. The family wanted to seize on the tax benefits of an

---

[1] For clarity, we refer to Michael Westford, Connie Westford, and Michelle Westford by their first names. We intend no disrespect.

Internal Revenue Code Section 1031 tax-deferred exchange.[2]  Matthews agreed

and on March 3, 2017, she signed a new purchase and sale agreement with

Michelle.  Michael again prepared the agreement but with help from an attorney.

Michelle never discussed property boundaries with Matthews.

The sale closed on April 18, 2007.  Michelle signed a promissory note and

deed of trust and Matthews issued a statutory warranty deed conveying the

property to Michelle.  The promissory note obligated Michelle to pay Matthews

interest-only payments of $1,500 each month and a $300,000 balloon payment

due on May 1, 2012.[3]  Matthews agreed to extend the balloon payment if

necessary to secure the release of third-party duck hunting rights to the property.

Michael and Connie paid Matthews the $200,000 down payment.  The couple

also lived on the property and paid the monthly interest-only payments to

Matthews.[4]

In 2009, Michelle conveyed the property by quitclaim deed to the ALAKA

Trust.  The subject property was the only property held in the Trust.  Michael and

Connie are the primary beneficiaries of the trust and Michelle is the Trustee.  In

2011, neighboring property owners surveyed their property.  The survey showed

that their property, not Michelle's, bordered the waterfront.

---

[2] Michelle is also a licensed real estate agent.  Together, the Westford family owns multiple real estate businesses and properties.

[3] The promissory note also provides:

If Maker or Holder sues to enforce this Note or obtain a declaration of its rights hereunder, the prevailing party in any such proceeding shall be entitled to recover its reasonable attorneys' fees and costs incurred in the proceeding (including those incurred in any bankruptcy proceeding or appeal) from the non-prevailing party.

[4] Michael and Connie began using the property in September 2006 but did not begin making payments to Matthews until January 2007.

In May 2012, Michael and Connie stopped making monthly payments to Matthews but continued to live on the property. Two years later, Matthews secured the release of the third-party duck hunting rights and demanded Michelle's balloon payment. Michelle refused to pay.

On April 8, 2014, Matthews filed a complaint for judicial foreclosure, naming Michelle and the ALAKA Trust (collectively Michelle) as defendants. Two weeks later, Michelle filed for bankruptcy. On September 3, 2015, Michelle answered the complaint, asserting as an affirmative defense that Matthews "affirmatively misrepresented that the Property included the waterfront." Michelle claimed that she was entitled to a "set-off against the [Promissory] Note."

Matthews filed a motion for summary judgment. The trial court denied her motion. The court found that Michelle was in default on the note and the mortgage, failing to make "more than four years' worth of payments, including a $300,000 balloon payment." But the court delayed entering a judgment and set the case for trial to resolve Michelle's claim of affirmative misrepresentation and assess whether an offset was necessary.

During a three-day bench trial, Michelle argued that Matthews was not entitled to damages because she committed fraud:

> Matthews perpetrated a fraud. And as to the damages, there's no interest due on a $300,000 balloon payment when the fraud perpetrated is considered fraud in the inducement of the contract, and eliminates any obligation to pay that balloon payment.

Michelle called two expert witnesses to prove her damages. She called civil engineer and land surveyor John Semrau to testify about the 2011 survey of the property. Semrau reviewed the 2011 survey and visited the property in

4

person. He testified that the western property line was an "earthen dike" and the parcel did not include waterfront. Semrau also testified that a layperson would be unable to determine the boundary without a survey. The second expert witness, real estate appraiser David Parsons, testified that the "historical or retrospective value" of the property as of April 2007 was $800,000 with waterfront and $370,000 without waterfront.

Matthews spent most of her time at trial rebutting Michelle's claim of fraud. Matthews denied she told the Westfords that the parcel included waterfront. She testified that the first time Michael visited the property,

> we stood out there and I told him that we didn't own the tidelands. And I showed him the boundary lines where the fence lines were on the property. I didn't say anything about there's 350 feet or this is 900 feet because I did not know or care. I just lived out there and, you know, tried to take care of the land. I didn't measure it.

Matthews argued that even if she had been mistaken about the boundaries of the property, that mistake would not "satisfy all of the nine elements of the affirmative defense of fraud or misrepresentation."

Matthews pointed to the sophistication and expertise of the Westfords in matters of real estate:

> Then there's the Plaintiff's reliance upon the truth of the representation. . . . [W]e are talking about three licensed real estate brokers[5] in the State of Washington, all of whom had extensive experience investing in investment property.

The trial court issued findings of fact and conclusions of law, concluding Matthews was "entitled to a judgment of foreclosure and to deficiency judgment if

---

[5] Connie testified that at the time of trial in May 2018, she was a real estate broker but her license had "been on hold" for 15 years.

5

the public sale at foreclosure does not result in net sales sufficient to pay the judgments awarded in [her] favor." The court determined that Matthews negligently misrepresented the boundary lines of her property to Connie and Michael. It found that Matthews was "most likely simply mistaken that her property did not abut the water." The court also found that Michael and Connie were 30 percent negligent in causing their own damages because they "had information before closing they did not act upon" and "should have investigated." The court awarded Michelle a net offset of $301,000 as damages for Matthews' negligent misrepresentation to Michael and Connie.

The court then listed Matthew's damages in detail:

> Matthews is entitled to judgment against Michelle Westford for the unpaid balloon payment of $300,000[.00]; interest thereon in the amount $235,861.42 through 8/31/2018; the unpaid monthly interest payments in the amount of $33,690.34; late charges of $5,250[.00]; unpaid real estate taxes of $8,500[.00] for 2015, 2016 and 2017; [t]herefore, the total amount of the judgment to be entered in favor of the Plaintiff Carol Matthews, against the Defendants is $282,301.76, plus separate judgments for attorneys' fees and costs.

The court ruled that Michelle had "one year to redeem the property from foreclosure sale pursuant to the terms of RCW 61.23.020."

Michelle and Matthews appeal.

ANALYSIS

Michelle argues the trial court erred in awarding prejudgment interest on the unpaid balance of the promissory note before deducting "the set-off for misrepresentation" and in decreeing foreclosure in favor of Matthews "when the buyers proved misrepresentation by the seller and damages in excess of the

6

unpaid purchase price." Michelle asserts the court also erred in awarding Matthews attorney fees and costs as the prevailing party. Matthews cross appeals, arguing that Michelle's claim of offset based on misrepresentation is not an affirmative defense but a counterclaim barred by the statute of limitations. Matthews also argues the trial court violated her right to due process and, in the alternative, substantial evidence does not support the court's finding of negligent misrepresentation.

Statute of Limitations

We review de novo whether a statute of limitations bars an action. 4518 S. 256th, LLC v. Karen L. Gibbon, PS, Trustee, 195 Wn. App. 423, 435, 382 P.3d 1 (2016). A claim for offset is an affirmative defense and timely as long as the main action itself is timely. Olsen v. Pesarik, 118 Wn. App. 688, 692, 77 P.3d 385 (2003).

Michelle pleaded the affirmative defense of "set-off" based on the difference between the value of the Padilla Bay property "as represented" to include waterfront and the value "as is" with no waterfront. Michelle argued she was entitled to an offset because Matthews affirmatively misrepresented the boundaries of the property. Michelle properly pled her claim for offset as an affirmative defense under CR 8(c). See Maziarski v. Blair, 83 Wn. App. 835, 839, 924 P.2d 409 (1996). Because the parties agree that Matthews filed a timely

foreclosure action, Michelle's claim for offset is also timely.[6]

Due Process

Matthews argues that the trial court erred in concluding sua sponte that she is liable for a tort that Michelle did not plead and the parties did not litigate. She contends that the court's ruling violated her due process rights because she had no notice that she could be liable for negligent misrepresentation and had no chance to present arguments in her defense. We agree.

We review a trial court's findings of fact and conclusions of law to determine whether substantial evidence supports the findings and, in turn, whether those findings support the conclusions of law. Willener v. Sweeting, 107 Wn.2d 388, 393, 730 P.2d 45 (1986). Unchallenged findings of fact are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 819, 828 P.2d 549 (1992). We review conclusions of law de novo. Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.2d 369 (2003).

Due process guarantees the right to a full and fair hearing. Baxter v. Jones, 34 Wn. App. 1, 3, 658 P.2d 1274 (1983). Due process requires the opportunity to be heard and notice reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and allow them to present their objections. Olympic Forest Prods., Inc. v. Chaussee Corp., 82 Wn.2d 418, 422, 511 P.2d 1002 (1973).

---

[6] Matthews argues that Michelle's assertion of offset is not timely because it amounts to a counterclaim rather than an affirmative defense. Because Michelle's claim arises out of the same transaction as the foreclosure, it would also be a timely counterclaim. See Seattle First Nat'l Bank, NA v. Siebol, 64 Wn. App. 401, 407, 824 P.2d 1252 (1992) (the timeliness of counterclaims arising out of the same transaction rest on the underlying cause of action).

Michelle asserted a defense of offset based on "affirmative[ ] misrepresent[ation]." Affirmative misrepresentation is a type of fraudulent misrepresentation. Dussault ex rel. Walker-Van Buren v. Am. Int'l Grp., Inc., 123 Wn. App. 863, 871, 99 P.3d 1256 (2004). Fraudulent misrepresentation requires proof by clear, cogent, and convincing evidence of these nine elements of fraud:

> (1) [R]epresentation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the [other party]; (6) [the other party]'s ignorance of its falsity; (7) [the other party]'s reliance on the truth of the representation; (8) [the other party]'s right to rely upon it; and (9) damages suffered by the [other party].

Cornerstone Equip. Leasing, Inc. v. MacLeod, 159 Wn. App. 899, 905, 247 P.3d 790 (2011); Stiley v. Block, 130 Wn.2d 486, 505, 925 P.2d 194 (1996). Michelle argued in her pleadings and at trial that she was entitled to an offset because Matthews fraudulently misrepresented the boundaries of her property.

Negligent misrepresentation is a different cause of action based on a failure to exercise reasonable care in obtaining or communicating information in business transactions. ESCA Corp. v. KPMG Peat Marwick, 135 Wn.2d 820, 826, 959 P.2d 651 (1998). In cases of negligent misrepresentation, "there is no intent to deceive but only good faith coupled with negligence." RESTATEMENT (SECOND) OF TORTS § 552 cmt. a (AM. LAW INST. 1977). The elements of negligent misrepresentation differ from affirmative misrepresentation and a party must prove these six elements by clear, cogent, and convincing evidence:

> (1) [T]he [party] supplied information for the guidance of others in their business transactions that was false, (2) the [party] knew or should have known that the information was supplied to guide the [other party] in his [or her] business transactions, (3) the [party] was negligent in obtaining or communicating the false information, (4)

9

the [other party] relied on the false information, (5) the [other party]'s reliance was reasonable, and (6) the false information proximately caused the [other party] damages.

<u>Ross v. Kirner</u>, 162 Wn.2d 493, 499, 172 P.3d 701 (2007).[7]

Further, the concept of comparative fault applies to negligent misrepresentation claims. <u>ESCA Corp.</u>, 136 Wn.2d at 830 ("A plaintiff's negligence directly reduces plaintiff's recovery by the percentage of negligence involved."). But comparative fault does not apply to the intentional tort of fraud. <u>See</u> RCW 4.22.015; <u>Morgan v. Johnson</u>, 137 Wn.2d 887, 895-96, 976 P.2d 619 (1999) (quoting <u>Welch v. Southland Corp.</u>, 134 Wn.2d 629, 635, 952 P.2d 162 (1998)).

Because Michelle pleaded only affirmative misrepresentation and Matthews had no notice of the court's intent to decide the merits of the case based on the unpleaded tort of negligent misrepresentation, Matthews had no chance to present evidence or argue against a claim of misrepresentation based on negligence. Matthews was unable to address issues distinct to negligent misrepresentation, including whether she "knew or should have known" Michelle would use the information provided to her parents to "guide" her "business transactions,"[8] whether Matthews was "negligent in . . . communicating the false information" to Michelle's parents, or whether Michelle's reliance on Matthews'

---

[7] Citing <u>Colonial Imports, Inc. v. Carlton Northwest, Inc.</u>, 121 Wn.2d 726, 731-34, 853 P.2d 913 (1993), Matthews claims that a duty to disclose is an essential element of negligent misrepresentation. But <u>Colonial Imports</u> does not hold that one must have a duty to disclose to be liable for negligent misrepresentation. Rather, it posits that a duty to disclose may give rise to a negligent misrepresentation claim. <u>See</u> <u>Colonial Imports</u>, 121 Wn.2d at 731-32.

[8] The court found that Michael and Connie "assigned their [purchaser's] interest" to Michelle. But there is no evidence in the record of a written assignment of Michael and Connie's interest to Michelle. Instead, Matthews and Michelle executed a separate purchase and sale agreement.

10

statements to her parents was "reasonable." Ross, 162 Wn.2d at 499. And Matthews had no chance to address comparative fault.

Michelle argues that the trial court "[i]n effect" acted within its discretion to amend the pleadings from affirmative misrepresentation to negligent misrepresentation to conform to the evidence under CR15(b). But CR 15(b) applies only when unpled issues "are tried by express or implied consent of the parties." Michelle offers no evidence that Matthews consented to try the fraud claim as negligent misrepresentation. And the trial court cannot amend under CR 15(b) if "actual notice of the unpleaded issue is not given, if there is no adequate opportunity to cure surprise that might result from the change in the pleadings, or if the issues have not in fact been litigated with the consent of the parties." Harding v. Will, 81 Wn.2d 132, 137, 500 P.2d 91 (1972). Here, the trial court made no effort to notify the parties of its intent to decide the merits of the case based on an unpleaded cause of action. The ruling deprived Matthews of her right to a full and fair hearing on the new claim.[9]

## Attorney Fees

Both parties request attorney fees on appeal. A prevailing party to any action enforcing a contract that provides for attorney fees and costs is entitled to an award of fees. RCW 4.84.330. As the prevailing party on appeal, Matthews is entitled to attorney fees under the express terms of the promissory note. We award Matthews attorney fees subject to compliance with RAP 18.1.

---

[9] Because we conclude that the trial court erred in determining that Matthews negligently misrepresented the boundaries of her property, we do not reach her sufficiency of evidence claim or Michelle's assignments of error.

We reverse and remand to the trial court to strike the finding of negligent misrepresentation and the ensuing offset.

_Brennan, J_

WE CONCUR:

_Leach, J._

_Appelwick, J._